243 S.W.2d 337 (1951)
HUBERT et ux.
v.
MAGIDSON et al.
No. 42320.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*339 Joseph A. Kirkwood, St. Louis, for appellants.
Max Sigoloff, St. Louis, for respondents.
COIL, Commissioner.
Appellants, plaintiffs below, sought a mandatory injunction requiring respondents to remove alleged encroachments from an easement reserved in a deed, and for specific performance of a contract providing for the improvement of the easement.
We have jurisdiction because appellants adduced testimony to the effect that unless the injunctive relief was awarded their property would be damaged in excess of $7500. Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 11, 40 S.W.2d 545, 550[1, 2]; Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 356, 4 S.W.2d 776, 783[2, 3].
We shall sometimes refer to appellants as plaintiffs, to respondent Magidson as defendant, and to respondent Oakland Realty Company, a corporation, as defendant corporation.
In 1947 plaintiffs owned a 42-unit apartment building at 6226-6238 Oakland Avenue, St. Louis, Missouri, and a 28-car garage in the rear thereof. Defendant corporation owned ground immediately west of plaintiffs' property and on the southeast corner of Oakland, an east and west street, and Graham, a north and south street, fronting 100' on Oakland Avenue by a depth of 200 feet. Plaintiffs owned, in addition to the apartment and garage, and immediately south of defendant corporation's property, a strip of land 12' wide and 100' deep, extending from Graham Avenue on the west to the rear of plaintiffs' apartment building on the east. This strip of land was used by plaintiffs and their tenants for ingress and egrees to and from the rear of their apartment building.
The north building line on which plaintiffs' apartment stood was 37' south of the lot line of Oakland. Defendant corporation through defendant, its president and contractor, began to excavate the corner ground mentioned preliminary to the proposed construction of a 3-story apartment building. The north line of the excavation (building line) was 25' south of the lot line on Oakland. Plaintiffs, or one of them, objected to the building line as disclosed by the excavation and obtained a decision from the building commissioner of the City of St. Louis preventing defendant corporation from proceeding on a building line of 25 feet. This decision was appealed to the board of adjustment of the City of St. Louis and then to the circuit court.
While the appeal was pending, and on March 14, 1947, a certain agreement was entered into by and among plaintiff Barney A. Hubert, defendant corporation, and the individual defendant, which provided that a judgment might be entered modifying the order of the board of adjustment so as to permit the erection of defendant corporation's building on a line not less than 37' from the front lot line on Oakland Avenue. This agreement further provided that plaintiffs would at once execute a quitclaim to the 12' strip heretofore described, conveying their title therein to defendant corporation, and "reserving to first party and his wife, their heirs and assigns, and their tenants, servants, visitors, and licensees and other persons going to or from any part of their premises east of said strip, a perpetual and exclusive right of way, easement, driveway and full and free passage at all times and for all purposes, with or without vehicles, over and along the south ten (10) feet of said strip of land; the conveyance being made to enable the construction of the 3-story apartment on lot at the southeast corner of Oakland Avenue and Graham Street, in the City of St. Louis, on a line not less than 37 feet south of the north line of said lot."
The agreement further provided for reasonable access by defendants to the rear of defendant corporation's apartment building for the purposes of necessary repairs *340 and painting and during the construction of a certain driveway, wall, and fence.
Paragraph 6 of the agreement provided: "Upon delivery of the quitclaim deed to the strip of land second parties will pay to first party $1000.00. And second parties agree at their expense to remove the present drive over said strip of land, grade the same, and replace with 1, 2, 4 mix, six-inch concrete drive on the south ten feet of the strip, with round curbs on each side, and expansion joints at 10 or 12 feet intervals; to remove present rear retaining wall, replace with a vertical side reinforced concrete retaining wall, and then erect on top of wall and along south line of said driveway to rear line of the strip of land aforesaid a 4-foot chain link cyclone wire fence, manufactured by American Steel and Wire Company. All of said work shall be completed immediately after construction of foundation of the apartment building."
By quitclaim deed, dated March 13, 1947, recorded March 14, 1947 and, presumably at least, not delivered until March 14, 1947, simultaneously with the execution of the agreement above described, plaintiffs conveyed to defendant corporation the strip of ground 12' × 100', containing the reservation stated in the agreement and set out in full above.
The strip of ground 12' × 100' contained a paved driveway and a retaining wall at the time the contract and deed were executed. The width of the pavement and dimensions of the wall are not shown in evidence.
The evidence tends to show that defendant corporation, through defendant, president of the corporation and also contractor for the proposed building, removed the surface of the existing driveway approximately a year subsequent to March 14, 1947. Some time between September and the first part of December 1949, after the apartment building had been substantially completed, defendants constructed a concrete driveway on some portion of land south of the south wall of defendant corporation's apartment building.
The evidence shows that defendants intended to place the south wall of the proposed apartment building so that it would occupy 2' of the 12' purchased. When the south wall of the apartment building was completed, it was discovered that there were not 10' remaining between the south wall of the apartment and the south line of the 12' strip. The evidence does not specifically show the reason for this result. There is no evidence that this resulted from any preconceived intentional action by defendants. On the contrary, an examination of plaintiffs' Exhibit 9, a survey including the south wall of the apartment building and the land adjacent thereto, suggests that the situation resulted from either a miscalculation on the part of the contractor or from having proceeded to build from an inaccurate survey. In any event, at its southwest corner the south wall of the apartment building extended onto the south 10' of the 12' strip a distance of either 9 1/8" or 9¼" and to a constantly decreasing distance eastwardly to a place at about ¾ the length of the south wall, at which point the wall coincided precisely with the north line of the south 10' of the 12' strip.
Defendant corporation thereafter purchased a piece of ground 18" wide and 100' deep fronting on Graham Avenue and running eastwardly therefrom and contiguous to the 12' strip.
Defendants constructed the drive, curbs, and retaining wall referred to in the agreement of March 14 in the following manner: a concrete retaining wall 10½" wide with a fence on top of it was built, the south edge thereof coinciding with the south line of the 18" strip of ground. Immediately to the north of the retaining wall was placed a curb from 6" to 8" wide and about 5" high. Immediately north of this curb was placed a driveway which, for the length of the south wall of the apartment building, was 7'6" wide, 7'9" wide at a place some distance east of the east wall of the apartment building, 9'3" wide at the eastern driveway entrance, and 8'8" wide at the western driveway entrance. Immediately north of this driving surface, a curb or walk was placed approximately 5" in height and varying in width from 1'10¼" at the southwest corner of the apartment building to 2'7 3/8" at the southeast corner.
*341 The south wall of the apartment building contains casement windows which swing outwardly over the south 10' of the 12' strip a maximum distance of 1'4 5/8" from the south wall of the building. The distance between the bottoms of these casement windows and the surface of the curb or sidewalk below them varies between approximately 1½' on the east to something more than 5½' on the west. A photograph of the improvements, showing also the south wall of defendant corporation's apartment building is inserted for a clearer understanding of the physical conditions existing at the time of trial.

Plaintiffs contend that by virtue of the reservation contained in the deed and the language of paragraph 6 of the agreement, they have an exclusive easement over the south 10' of the 12' strip; that plaintiff Barney A. Hubert is entitled to have constructed on said south 10' a concrete driving surface 10' in width with 6" rounded curbs on each side and a retaining wall and fence to the south of the south curb, with neither the curbs nor the wall occupying any portion of the south 10 feet.
The trial court found for defendants and dismissed plaintiffs' bill at their costs. It is our province to review the evidence de novo and to enter whatever decree should have been entered on the evidence adduced, with due deference accorded the findings of the trial chancellor in his determination of factual questions, especially those depending upon conflicting testimony. Middelton v. Reece, Mo.Sup., 236 S.W.2d 335, 341[2].
It is clear from the evidence that defendants had planned to construct an apartment building of a certain size based upon the premise that the front or north building line could be 25' south of the lot line on Oakland Avenue. There arose a dispute about the building line. Defendants agreed that if plaintiffs would sell defendant the strip of ground 12' wide adjoining defendants' *342 property on the south, defendants would move their north building line so that it would be 37' south of the lot line on Oakland Avenue. Plaintiffs were unwilling to make this conveyance unless ingress and egress to and from Graham Avenue were provided to the rear of their apartment building. An agreement was executed, the provisions of which have been stated, and simultaneously a quitclaim deed was delivered which reserved an exclusive easement to plaintiffs over and along the south 10' of the 12' strip. The agreement, not signed by plaintiff Karen Hubert but signed by plaintiff Barney A. Hubert and defendants, provided in paragraph 6 for the improvement of the south 10' over which the easement was reserved.
There can be no doubt that the deed provided for an exclusive easement in plaintiffs over and along the south 10' of the 12' strip. This is the plain and unambiguous language of the deed. The agreement in so far as here concerned is nothing more than a description of the manner in which the south 10' of the 12' strip was to be improved by defendants for the benefit of plaintiffs. Plaintiff Karen Hubert does not contend that defendants improperly interfered with the easement by making improvements. She has recognized that defendants were to make certain original improvements upon the easement and seeks the benefit of improvements made or to be made in accordance with the terms of the agreement executed by her husband.
When paragraph 6 of the agreement is construed in the light of the fact that the deed provided for an easement along a strip of ground of a total width of 10', we have no difficulty in arriving at the meaning of paragraph 6. We are of the opinion and so hold that defendants agreed to construct a concrete drive with rounded curbs at each side, with a retaining wall to the south of the south curb, and a certain type of cyclone wire fence on top of the retaining wall, and that all of this construction was to be included on, and fully occupy, the total width of 10 feet.
No specifications were stated in the agreement as to the width of the curbs, the width of the retaining wall, or the width of the driving surface. Thus, defendants would comply with their contract by constructing a wall, curbs, and driving area in a reasonable manner, having in mind the primary purpose of providing ingress and egress to and from the rear of plaintiffs' apartment building.
Applying the construction which we give to the language of the deed and of the agreement to the facts, it follows that plaintiffs were entitled to an easement over and along the south 10' and were to have a retaining wall, two curbs, and a driving surface occupying the whole of the south 10' of the 12' strip; that the retaining wall and curbs were to be of reasonable dimensions; and that the width of the driving surface would necessarily be the distance between the two curbs. The evidence shows that the retaining wall actually constructed is 10½", and that the south curb is 6" to 8" in width and about 5" high. It seems to be conceded, tacitly at least, by plaintiffs that a curb 8" in width and a retaining wall 10½" in width constitute a reasonable construction of each. We agree and shall so consider. Therefore, if two curbs each 8" wide and a retaining wall 10½" wide were placed upon the south 10' of the strip beginning at the respective outside lines thereof, the driving area or the distance between the curbs would be 7'9½".
As noted, the driving surface now is, at its narrowest place, 7'6" in width, widening at one place beyond the east wall of defendants' building to 7'9" and considerably wider at each the east and west entrances. Thus it appears that the actual driving surface, as presently constructed, is only ½" to 3½" narrower than the total driving surface to which plaintiff could be entitled under any reasonable performance by defendant of the terms of the agreement to improve the easement.
We further note that if the curbs were as much as 10" in width, we could not necessarily say that they would be too wide to constitute reasonable performance of the requirements of paragraph 6. If the curbs were 10" in width, then the driving surface now available would be as wide or wider than that contemplated by paragraph 6. We are mindful of the fact that the *343 controlling consideration in determining whether defendants constructed the improvements in a reasonable manner is, whether the driving surface available after performance affords to plaintiffs reasonable access to their building by usual vehicular traffic; limited, always, by the proposition that the driveway, including its curbs and retaining wall, was to occupy a full 10 feet. The trial court found from the evidence that the driving surface as constructed is wide enough to afford a reasonably satisfactory means for ingress and egress to and from plaintiffs' property. While there was some evidence to the contrary, we think the evidence establishes the correctness of the trial court's finding, and we reach the same conclusion.
At present the retaining wall and south curb are not on the south 10' of the 12' strip but are entirely on the 18" strip. In fact, a survey, plaintiffs' Exhibit 9, indicates that from 1¼" to 1½" of the actual driving surface is now upon part of the 18" to the south of the 12' strip. Plaintiffs do not have an easement in this 18" strip of ground. We think it is clear that the retaining wall, fence, and curbs constitute an integral part of the driveway as contemplated by the provisions of paragraph 6. It is therefore important to plaintiffs to have an easement over the ground occupied by the entire drive, including the curb and retaining wall on the south. This, for the obvious reason that otherwise the full use of the easement, as improved in accordance with the agreement, may easily be interfered with by some action on the part of the present or a subsequent owner of the 18" strip on the south.
At the trial, an offer was made in open court by defendant corporation and by the individual defendant as president of defendant corporation to convey to plaintiffs an easement over and along the 18" immediately south of the original 12' strip. Plaintiffs are entitled to this easement, and if defendant corporation conveys it, plaintiffs will then have, for all practicable purposes, everything to which they are entitled in equity under the deed and the agreement.
As we have mentioned, defendant corporation's building does encroach upon plaintiffs' easement by part of the south wall thereof extending into the south 10' of the property conveyed and by the casement windows on the first floor, when open outwardly, extending into the south 10' for as much as 1'4 5/8" beyond the south wall of the building and at a height which would interfere with the use of an easement of ingress and egress. 28 C.J.S., Easements, § 97(b), pages 779, 780; Cook v. Ferbert, 145 Mo. 462, 464, 465, 46 S.W. 947, 948. For the reason, however, that by conveying to plaintiffs an easement in the 18" strip of ground plaintiffs will have, for practicable purposes, everything to which they were entitled, it would be wholly inequitable to require defendants to remove the south wall and to prevent the casement windows from opening outwardly; especially so when no real advantage therefrom would accrue to plaintiffs. We must consider the relative benefits to plaintiffs as against the injury to defendants. Scuorzo v. Infantino, 104 N.J.Eq. 520, 522, 146 A. 326, 327; Duke v. Crossfield, Mo.App., 240 S.W.2d 180, 183[5, 6]; Rubinstein v. City of Salem, Mo.App., 210 S.W.2d 382, 386 [4, 5].
It is true that the curb on the north amounts in reality to a walk and that it serves the purpose of protecting the out-swinging casement windows from damage by vehicles. But the matter of the casement windows, in the event of the conveyance of the easement in the 18" strip, is of no concern because, irrespective of the width of the curb on the north, its southern edge would occupy the same position as the southern edge of the present walk and, so long as the casement windows do not extend into the driving area, they do not interfere with the use of plaintiffs' easement.
The curbs as constructed are not "round" curbs as specified in paragraph 6 of the agreement. There is no satisfactory evidence in the record indicating whether, and if so, the amount in which, plaintiffs are damaged by reason of "square-edged" rather than "round" curbs. No relief will be granted by mandatory injunction requiring defendant to replace the present curbs with "round" curbs. Under the evidence, the matter appears trivial and equity will not by mandatory injunction grant relief *344 where the injury is small or technical. Warren v. Cavanaugh, 33 Mo.App. 102, 109; Putnam v. Coates, 220 Mo.App. 218, 222, 283 S.W. 717, 719.
In plaintiffs' petition upon which the case was tried, damages were alleged in the sum of $7500 for injury sustained during the time subsequent to the execution of the deed and agreement and prior to the time of the completion of the improvements on the easement. Damages in the sum of $500 were alleged by reason of legal fees expended by plaintiffs in connection with some litigation which it was averred was made necessary due to defendants' failure to properly perform under the provisions of the agreement. As to both of these matters, no evidence was adduced as to damages sustained. We therefore do not have before us any question of damages as to these items.
Plaintiffs' evidence as to damages went only to the question of the value of their property with a driving surface 10' wide as opposed to a driving surface of the present width. Our conclusions herein make it unnecessary to consider this evidence.
Likewise our conclusions make it unnecessary to determine whether the trial court properly dismissed plaintiffs' action as to certain other defendants, viz., the holder of a deed of trust on defendant corporation's apartment property, lessees of apartments, and certain individuals alleged to have asserted mechanics' liens against the building.
The case is reversed and remanded with directions to set aside the judgment and enter a decree and judgment directing defendant corporation to forthwith convey to plaintiffs, their heirs and assigns, a perpetual and exclusive right of way and easement over and along the strip of land having a front of 18" on the east line of Graham Street by a depth eastwardly of 100' to the property of plaintiffs, contiguous to a strip of land 12' × 100' conveyed by plaintiffs to defendant corporation by a quitclaim deed executed on March 13, 1947 and recorded on March 14, 1947, in Book 6566, page 440 of the records of the recorder of deeds for the City of St. Louis (a legal description of the strip 18" × 100' to be included in the decree), for the benefit of plaintiffs, their heirs and assigns, tenants, servants, visitors, licensees, and other persons going to and from the land and improvements adjacent to and east of the strip of land above described, said strip of land over and along which the easement herein is granted now being improved with and occupied by a concrete retaining wall, a 4' cyclone wire fence on top thereof, a concrete curb 6" to 8" in width and approximately 5" high, and 1¼" to 1½" of a concrete driveway; further providing and directing that, when such conveyance above provided has been made, plaintiffs' bill shall be dismissed as to defendant Phil B. Magidson; and further providing that the costs, including the taxable costs on this appeal, shall be taxed one-half against plaintiffs and one-half against defendant corporation.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.