**Alvin WILEY, et al., Respondents,**

v.

**The PITTSBURG AND MIDWAY COAL MINING COMPANY, Appellant.**

**No. WD 38239.**

Missouri Court of Appeals,
Western District.

May 12, 1987.

Harold A. Kyser, Butler, for appellant.

H. David Barr, Kansas City, Kan., Lawrence M. Berkowitz, Kansas City, Mark D. Hinderks, Overland Park, Kan., for respondents.

Before CLARK, C.J., and NUGENT and LOWENSTEIN, JJ.

CLARK, Chief Judge.

Respondents, Phillip and Donna Pieratt and J.A. and Dorothy Payne, were plaintiffs below in a suit for property damages alleged to have been caused by explosive charges set off by appellant, The Pittsburg and Midway Coal Mining Company, (P & M), during the course of its coal mining operation.[1] The Pieratts had judgment for $22,200.00 and the Paynes recovered $37,500.00, all for structural damages to buildings on the plaintiffs' lands.

---

1. A number of other plaintiffs were in the case at trial. Some who recovered smaller judg-  ments have been paid. Plaintiffs Wasinger did not receive a verdict from the jury.

P & M presents various claims of trial error including the contention that the trial court erred in overruling its objection to the testimony of plaintiffs' expert witness responding to a hypothetical question. We agree that the evidence was improperly received and therefore reverse the judgment and remand the case for a new trial.

With the sole exception of the dispute as to whether the damage to plaintiffs' structures and improvements was caused by P & M's mining of coal, the facts of the case were not in contest. P & M operates a surface coal mine on 28,000 acres of land in west central Missouri. The process used is strip mining in which the soil and rock overlying the coal deposits are removed and the coal is extracted. The rock and soil overburden are loosened by explosive charges and that material is then removed by use of a dragline.

Plaintiffs Pieratt own acreage and farm structures north of Amoret, Missouri. The nearest building on their property to the P & M mine is about one-half mile distant. Plaintiffs Payne conduct a dairy and beef farming business, also located north of Amoret, approximately one mile from the mine. The general nature of the claims by the Pieratts and the Paynes was for damages to the structures on their respective properties.

According to a P & M employee, the method used to remove the overburden involves drilling a bore hole ten inches in diameter to a depth of 45 or 50 feet until coal is reached. A charge of ammonium nitrate weighing about 600 pounds is placed in the hole and detonated. Vibrations from the blast travel at speeds of 10,000 to 20,000 feet per second. The magnitude and shape of the vibration stress wave depends on the type and power of the explosive and the density of the rock.

Both the Pieratt and Payne witnesses testified that when charges of explosives were set off at the P & M mines, the buildings on their property would shake, the windows would vibrate and dishes would fall. Each kept diaries recording the shocks experienced from the blasting. Calendars for the years 1984 and 1985 were introduced in evidence as exhibits and bore notations such as: "Blast 5:33 Windows rattled & floor vibrated;" "2:10 Bad Blast 2:30 Mild;" "10:15 Big Blast;" "10 AM Heard Blast but felt nothing—again 10:45." In some months, no shocks were recorded. In others, particularly in 1984 as many as six or eight notations of explosions would be recorded in a single month.

Evidence of damage to the Pieratt and Payne properties came from testimony by the plaintiffs as to cracks in concrete, mortar fallen from joints in masonry walls, nail pops and cracks in sheetrock and bulges in walls. They also offered evidence by a real estate appraiser as to diminished market value attributable to the damage. P & M disputes the valuation evidence as well as the question of causation, but not the presence of the structural imperfections and indicia of disturbance and subsidence.

The first point of appeal concerns the receipt in evidence on behalf of plaintiffs, over objection by P & M, of testimony by Warren Mitchell, an expert witness called to give his opinion regarding the probable cause of plaintiffs' property damage. Despite some latent indication of disparagement by P & M, we assume Mitchell's qualification as an expert. The trial court so found. The question of whether a witness possesses expertise in the field is left to the sound discretion of the trial court. *Keller v. International Harvester Corp.,* 648 S.W.2d 584, 591–92 (Mo.App.1983). The issue here, however, is not the expert knowledge of Mitchell or even the need for such testimony, but the factual basis upon which Mitchell undertook to render his opinion.

According to the facts elicited on direct examination of Mitchell, he had personally inspected the damage to the Pieratt and Payne properties, but he had not been present when P & M detonated any explosives and he knew nothing in particular detail about the P & M mining operation. Mitchell's personal knowledge of the blasting which plaintiffs claimed was the source of the damage was therefore insufficient to permit formulation of an opinion on the ultimate fact of causation.

An expert witness may base a competent opinion upon matters within his personal knowledge or observation, upon competent evidence in the case or upon both. When the expert's opinion is based in part on hearsay, the proper way to present the opinion is to submit the evidentiary facts to the expert in a hypothetical question. *Howard v. Lundry*, 591 S.W.2d 193, 199 (Mo.App.1979). The attorney in this case attempted to do that, combining in the assumption the observations Mitchell had made himself with some facts taken from evidence in the trial. It is the adequacy of the latter to undergird the opinion which is at issue.

The hypothetical question put to Mitchell required that he assume, in addition to information he had gained from visiting the area, that P & M commenced blasting "at least in the mid-seventies" to mine coal, that the plaintiffs would feel vibrations from the blasts which would shake the house, that damage to the structures began to appear in the last three or four years and that neither earthquakes nor tornadoes had occurred. P & M's objection to the sufficiency of the foundation in the question was overruled and Mitchell then gave his professional opinion to be that the blasting had caused the damage.

Before the opinion as to causation was given by Mitchell and before P & M's objection to the sufficiency of the facts incorporated in the hypothetical question was finally overruled, several statements were elicited from Mitchell on voir dire by P & M. Mitchell acknowledged that damage from blasting varies depending on the amount of vibration. Whether a structure will be affected by vibration is determined in part by the distance between the structure and the site of the blast. Other factors which influence the potential for damage are the size of the explosive charge and the geology of the area, the character of the underground strata. P & M's objection to expression of Mitchell's expert opinion was based on the absence from the hypothetical question of any assumed distance between Pieratt and Payne properties and the location where blasting was done, any assumption of the strength of any charge and any geological data.

When damage to property is by vibration or concussion from blasting, there is an invasion of the premises and liability irrespective of negligence. *Richards v. C.B. Contracting Co.* 395 S.W.2d 737, 739–40 (Mo.App.1965); *Smith v. Aldridge*, 356 S.W.2d 532, 534 (Mo.App.1962). The capacity of the force generated by blasting to cause damage must be demonstrated at trial by circumstantial evidence because the concussions or vibrations that travel through the air or the earth cannot be seen. *Donnell v. Vigus Quarries, Inc.*, 526 S.W.2d 314, 316 (Mo.App.1975); *Poston v. Clarkson Construction Co.*, 401 S.W.2d 522, 525 (Mo.App.1966).

From cases such as *Summers v. Tavern Rock Sand Co.*, 315 S.W.2d 201 (Mo.1958), it appears that a submissible case for damages caused by blasting may be made on testimony that vibrations were felt coincidentally with the detonation of the explosive and that physical evidence of structural damage was observed thereafter. Thus, in the present case, plaintiffs' testimony of the vibrations sensed, corroborated by the calendar diaries, and the perceived cracks in walls and floors was enough at least to survive a motion at the close of plaintiffs' evidence. The issue, however, is not submissibility but whether the testimony by plaintiffs' expert, Mitchell, was erroneously admitted over objection.

Unquestionably, evidence by an expert witness establishing the cause of plaintiffs' damage to have been the explosions detonated by the defendant is a persuasive aid to plaintiffs' cause and is unfavorable to the defense. The value of expert evidence lies in the superior knowledge of the subject and because the expert is able to discern and trace the causal connection, if any, between successive events. *De Donato v. Wells*, 328 Mo. 448, 41 S.W.2d 184, 187 (1931). The expert must, of course, have an adequate factual basis upon which to express his opinion as the evidence would otherwise be mere speculation and conjecture.

■ Where the opinion of the expert is drawn from a hypothetical question required because the expert lacks personal knowledge of all material facts, it is error to admit the testimony if the question does not embody substantially all of the material facts relating to the subject or omits necessary elements. *Klaesener v. Schnucks Markets, Inc.*, 498 S.W.2d 555, 559 (Mo. 1973). The hypothetical question need not include all material facts in evidence but it must fairly hypothesize the material facts reasonably relevant to and justly presenting the questioner's theory of the case so that an answer of assistance to the jury in proper determination of the case may be elicited. *Odum v. Cejas*, 510 S.W.2d 218, 222 (Mo.App.1974).

■ Facts upon which an expert's opinion is based must measure up to legal requirements of substantiality and probative force, and the question of whether an opinion of an expert is based on and supported by sufficient facts or evidence to sustain it is a question of law for the appellate court. *Gavan v. H.D. Tousley Co.*, 395 S.W.2d 266, 270 (Mo.App.1965).

■ The hypothetical question put to witness Mitchell was deficient as demonstrated by Mitchell's own testimony as well as by common knowledge and experience. Mitchell was given no assumption in the question as to the dates when the blasting was conducted, no information as to the quantity of explosives used and no detail as to how the charges were placed, whether above or below the ground and if below, to what depth. Mitchell himself expressed no capability as a geologist and no data were given him as to the particular rock formations in which the charges were exploded. Mitchell also had no predicate given to him concerning the distance between the sites of the blasting and the plaintiffs' property. He did know generally that the mining was being done on P & M's 28,000 acre tract, but little more.

All of the details omitted from the hypothetical question were in evidence or available from P & M's records. Mitchell candidly admitted that distance, the size of the blast and the geology of the area would affect the amount of vibration and, derivatively, the extent of damage. The hypothetical question did not embody the material facts affecting the subject of the expert's opinion and it therefore was error to admit the answer over P & M's objection. For this reason, P & M is entitled to a new trial.

Appellant also complains in another point regarding plaintiffs' evidence of damages. The subject is likely to arise on retrial and must therefore be considered.

■ Evidence of monetary loss by reason of damage to certain structures on plaintiffs' lands was offered through plaintiffs' witness Larry Ritter, a real estate appraiser. Using primarily the market data approach, Ritter established a value for each of the properties and then applied a 65% depreciation factor attributable to the blasting damage. P & M says Ritter's evidence did not constitute credible or substantial proof of damage sufficient to support a verdict because the uniform application of 65% depreciation to all structures regardless of age or variation in damage was incredible, because the comparable properties used as sources of value were not representative and because the damages on which the depreciation was based were not segregated as to time of occurrence. The latter factor was of importance because some items of damage may have exceeded the claim limitation period.

It is true, as P & M observes, that some structures on each of the properties did not suffer any blasting related damage according to plaintiffs' own evidence. There was also evidence that some of the damaged structures were in better condition than others, either by reason of age or maintenance. The relevance of comparable sales prices for other properties was also subject to question, all of which could lead to discrediting Ritter's depreciation estimate of 65%. These criticisms of Ritter's testimony, however, do not go to the question of submissibility, as P & M argues, but to the weight of the evidence.

■ The evidence of value given to support a claim for damages is opinion

evidence, it is advisory in nature and in nowise binding on the jury whose province it is to determine credibility and weight. *Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487, 494 (Mo.App.1965). Inconsistency in opinion evidence is a matter affecting the weight to be given the testimony rather than the admissibility of the testimony. Thus, in *Mississippi Fuel Corp. v. Whitener*, 237 S.W.2d 239 (Mo.App.1951), the court held evidence of value admissible despite the fact that the witnesses ignored the existence of a previously constructed pipeline on some of the lots, valued all lots equally and stated that construction of the new pipeline destroyed the value of the lots for building purposes.

In this case, it was for the jury to decide whether the apparent inconsistency in use of a 65% depreciation factor, irrespective of age, condition and damage of the structures, impaired the weight and value of Ritter's estimates and opinion. It was not a basis upon which the evidence should have been excluded nor did it deprive plaintiffs' case of submissibility for want of proof of damages.

P & M also contends, with respect to determining the extent of damage for which it could be answerable in this suit, that Ritter's estimates were deficient because his value estimate did not take into account possible damage to the structures which occurred prior to the limitation period of five years. P & M says the jury was left to speculate how much of the depreciated value was attributable to causes not includable in the present claim.

It must be acknowledged that plaintiffs' evidence did little to permit a discrete appraisal of pre-limitation and post-limitation structure damage. The subject was treated in gross generalities. On retrial, plaintiffs would be well advised to avoid possible error by presenting the damage evidence with greater particularity in the time of occurrence. The critical date, measured by the commencement of suit five years later, was May 2, 1980. Therefore, any damage suffered in the 1970's when P & M was active in mining in the area would be excludable.

In the submission of the case, the court below instructed the jury that it was not to consider any damage caused prior to May 2, 1980. That instruction was, of course, only curative if the evidence permitted a separation of damages before and after the limitation period. In view of the reversal of the case on other grounds, it is unnecessary to expand upon discussion of the point beyond the observation that the assumption will be indulged favoring the jury's adherence to the instructions. Upon retrial, the same issue is not likely to recur.

Appellant also raises points concerning technical effects of harmonic action as related to the consequences of vibration disturbance and the propriety of permitting plaintiffs to amend their pleadings. These, too, are issues which should not arise in a new trial because the parties now have the benefit of briefing on those subjects.

The judgments in favor of plaintiffs Pieratt and Payne are reversed and those causes are remanded for a new trial.

All concur.