RFS, INC., et al., Respondents,

v.

J. Frederic COHEN, et al., Appellants,

**United Missouri Bank of St. Louis, Intervenor–Respondent.**

No. 53634.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 25, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 23, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Bradley Alan Winters, St. Louis, for appellants.

Robert Louis Jackstadt, Gerard F. Hempstead, Clayton, for intervenor-respondent.

Mark Alan Stites, Charles Wayne Primm, Edward M. Goldenhersh, William J. Travis, St. Louis, for respondents.

CARL R. GAERTNER, Judge.

Defendants appeal the trial court's order permanently enjoining them from making certain improvements to their shopping center, and also ordering them to pay plaintiffs' attorney fees and costs. We reverse and remand.

Defendants J. Frederic Cohen and Vera Cohen are partners doing business as Veeco Investment Company, which owns Lamp and Lantern Village, a shopping center located at Woods Mill and Clayton Roads in St. Louis County, Missouri. Plaintiffs RFS, Inc., and Prime Properties aggregately own tracts of land totalling approximately 47 acres contiguous to the northern boundary of Lamp and Lantern Village. Plaintiffs' properties are collectively known as One Forty–One Executive Center. Loehmann's Plaza, a shopping center, is located on the property, and much of the remainder of the property remains undeveloped. Originally named as plaintiffs in lieu of RFS, Inc., were McBride, Inc., and Clayton and One Forty One, Inc., which formed a joint venture known as The Clayton Venture. Subsequent to the filing of this appeal, however, the Clayton Venture transferred its interest in the subject property to RFS, Inc. Pursuant to this court's order of May 25, 1988, RFS, Inc., was substituted as a plaintiff. Prime Properties remains as plaintiff. Intervenor United Missouri Bank owns a separate parcel of property between Lamp and Lantern Village and Loehmann's Plaza. This parcel was originally a part of the property owned by the two plaintiffs and is included within the dominant estate described in the 1984 easement discussed below. The position of plaintiffs and intervenor is identical.

Lamp and Lantern Village is a 15.7 acre tract containing 11 buildings occupied primarily by retail stores, offices, and restaurants. 58.34 percent of the land is used for driveways and parking. A perimeter road extends from Clayton Road at the southwest corner of the tract along its western and northern borders ending at Woods Mill Road at the northeast corner of the tract. Access to Clayton Road is available at the southwest corner of the tract, and access to Woods Mill Road is available at the approximate center of the eastern boundary and at the two roads intersecting the northern leg of the perimeter road. Access to parking areas is provided by driveways intersected by aisles between painted parking slots. We have attached a sketch depicting the general layout of the development.

Loehmann's Plaza abuts the entire north perimeter road. It is accessible from the perimeter road at a point approximately opposite the intersection of the eastern driveway from Lamp and Lantern Village. Two other entrances presently exist from Woods Mill Road. However, the Missouri State Highway Department announced plans to close one of these entrances as part of the future improvement of Woods Mill Road.

Also depicted on the sketch are two proposed changes for which defendants have obtained approval from the City of Town & Country and which the trial court enjoined. One change would locate 23 parking spaces north of the Essen Hardware store on what is now the north perimeter road, creating a "jog" in the road. The second is the construction of a new office building and loading dock which would block the center access to the north perimeter road.

Previously the Lamp and Lantern Village property and 12 acres of what is now Loehmann's Plaza were owned by West County Village, a partnership. The West County Village partners, in 1978, executed and re-

corded an agreement purporting to create a perpetual easement for the benefit of the 12 acres (described as the adjacent parcel) approximately 50 feet in width along the northern border of the Lamp and Lantern property.[1] By 1984 these 12 acres had been acquired by Prime Properties and formed a portion of the entire 47 acre tract known as One Forty–One Executive Center. The development of Loehmann's Plaza began that year. Plaintiffs negotiated for a new easement because they were concerned about the potential loss of one entrance from Woods Mill Road due to the highway department's plans, and about the fact the 1978 easement ran to the benefit of only 12 acres of the entire development. Plaintiffs also wanted to obtain direct access to Clayton Road. The price defendants demanded fluctuated during negotiations, but the parties eventually agreed upon $250,185. Plaintiffs have paid this sum to defendants in installments. The easement contains, in pertinent part, the following provisions:

(C) Grantor wishes to grant, and Grantee wishes to receive, an easement for pedestrian and vehicular ingress and egress over and across the Grantor Premises.

(D) The Grantor Premises is presently improved with a shopping center, and the Grantee Premises is intended to be improved with a shopping center and office building complex.

\* \* \* \* \* \*

1. *Grant.* The Grantor hereby grants to the Grantee, its successors and assigns, as an easement appurtenant to the Grantee Premises, a perpetual non-exclusive easement for ingress and egress over and across the Grantor Premises to the public streets adjoining the Grantor Premises.

\* \* \* \* \* \*

4. *Paving of Easement.* Grantor covenants that it shall maintain the asphalt surface on the parking areas and drive-

ways of the Grantor Premises in good condition and repair.

\* \* \* \* \* \*

6. *Barriers.* Grantor shall not erect any barriers or other obstructions which will in any manner impair ingress and egress over the Grantor Premises between the Grantee Premises and public streets adjoining the Grantor Premises and without limiting the foregoing, shall maintain as a driveway (i) providing access between the Grantee Premises and Woods Mill Road, the northerly 50' of the Grantor Premises, and (ii) providing access between the Grantee Premises and Clayton Road, the westerly 50' of the Grantor Premises.

\* \* \* \* \* \*

8. *Attorneys Fees.* If suit is brought to enforce the provisions of this Agreement, the prevailing party shall be entitled to recover all of its costs and expenses, including its reasonable attorneys fees.

9. *Directional Signs.* Grantee shall have the right to place along the entrances and driveways on the Grantor Premises directional signs providing directions to the Grantee Premises.

The trial court concluded the 1984 easement includes not only the 50–foot driveway along the western and northern borders of Lamp and Lantern Village but also "encompasses the existing traffic lanes across its property which have been established and utilized under the easement for the purpose of ingress to and egress from the land belonging to plaintiffs and intervenor." The court further concluded that plaintiffs were entitled to "a permanent injunction to restrain [defendant's] proposed interference with their reasonable use of the easements and partial destruction thereof".

Our review of this equitable court-tried case is circumscribed by the well-known standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) and we are obliged

[1]. We do not address defendants' contention this was an invalid attempt to create an easement because of the common ownership of the dominant and servient estates. *See Bales v. Butts,* 309 Mo. 142, 274 S.W. 679, 681 (1925). The validity of the 1978 easement, supplanted by the 1984 easement, is irrelevant to the issues before us.

to affirm unless we find that the judgment is against the weight of the evidence or that the trial court erroneously declared or applied the law.

In holding that defendants "may not disturb, injure, or destroy the easement which encompasses the existing traffic lanes" we believe the trial court erroneously declared the law. The 1984 easement grants only a general right to cross defendants' property for ingress to and egress from plaintiffs' property. Aside from the mention of the 50–foot perimeter road along the western and northern boundary of Lamp and Lantern Village, the agreement neither defines nor describes the area which plaintiffs are entitled to cross.

Where, as here, an easement in land has been created in general terms or by implication as a way of necessity without agreement as to its definite location or description, a court of equity has jurisdiction to determine the location of the servitude. However, in so doing the court must give due and proper regard to the rights of all the parties by taking into consideration the condition and use of the servient premises and the purposes the easement was intended to serve, bearing in mind that the grantee is entitled to a reasonably convenient way. Nonetheless, the location must also be reasonable as respects the rights of the grantor. *O'Brien v. Richter,* 455 S.W.2d 473, 477 (Mo.1970); *Bolomey v. Houchins,* 227 S.W.2d 752, 755[2] (Mo.App. 1950); 28 C.J.S. Easements § 80 a., p. 760.

*State ex rel. Hillhouse v. Hunter Raffety Elevator, Inc.,* 636 S.W.2d 400, 402 (Mo.App.1982).

Similar considerations are relevant where a definite, described easement with a fixed location comes before a court of equity. In *Baum v. Glen Park Properties,* 660 S.W.2d 723 (Mo.App.1983) a deed established a specifically located easement that was 40–feet in width. When the owner of the servient estate erected a sign and planted trees on a part of the 40–foot strip, the owner of the dominant estate sued. The trial court ordered the sign and trees removed and enjoined the defendant from placing anything on the 40–foot strip. Because the evidence established that the plaintiff had not used and did not need the full 40 feet in order to fulfill the purpose of the easement, we reversed and remanded the case with directions to the trial court to determine an appropriate width and location for a roadway. After remand the trial court established a 20–foot road located in an area which would not require removal of defendant's sign and trees. We affirmed, concluding that this would not be burdensome to plaintiff whereas the other location would cause expense and inconvenience to defendant. *Baum v. Glen Park Properties,* 692 S.W.2d 831, 833 (Mo.App.1985).

In *DiPasco v. Prosser,* 364 Mo. 1193, 274 S.W.2d 279, 284 (1957) the trial court granted a 30–foot–wide easement. On appeal the Supreme Court concluded a 15–foot–wide easement was sufficient for reasonable use and reduced the width. In *Hubert v. Magidson,* 243 S.W.2d 337 (Mo.1951) the Supreme Court ordered relocation of an easement rather than requiring removal of encroachments from the easement area described in a deed. In so ruling the court stated "we must consider the relevant benefits to plaintiff as against the injury to defendants." *Id.* at 343.

■ These cases establish the principle that a court of equity looks to the respective rights of the dominant and servient estates with a view toward ensuring that the use and enjoyment of the easement by the dominant estate is not destroyed or substantially diminished, and also that the full dominion and use of the servient estate not be limited beyond what is essential to the fulfillment of the purpose and intent of the easement.[2] In other words, so long as

---

**2.** This equitable principle does not conflict with *Bladdick v. Ozark Ore Company,* 381 S.W.2d 760 (Mo.1964), an action at law in which a plaintiff sought actual and punitive damages as a result of a defendant's unauthorized relocation of a specifically defined roadway easement. In the instant case plaintiffs did not seek damages in their petition and they offered no evidence of actual damage other than speculation that the

the dominant estate receives all of the uses that it bargained for and is entitled to under the easement, equity will not restrict the free and full utilization of the servient estate. Accordingly, we look to the record for evidence showing that the proposed improvements to defendants' property would so interfere with or substantially affect the rights granted to plaintiffs as to warrant the exercise of the injunctive power of a court of equity.

■ In their petition plaintiffs alleged the location of 23 new parking spaces near the northwest corner of Lamp and Lantern Village requiring a "jog" in the northern leg of the perimeter road and the elimination of the center driveway into the road "will seriously interfere with Plaintiffs' Easement by restricting the flow of traffic for the purpose of ingress to and egress from the [defendants] Premises", and "will cause irreparable injury to Plaintiffs by preventing the vital flow of traffic to and from Plaintiffs' shopping center...." In an effort to meet their burden of proving these allegations plaintiffs offered the testimony of Thomas Swenson, an engineer specializing in traffic and roadway design. Swenson had originally been hired by plaintiffs in 1984 as a consultant because of the potential loss of one entrance to Loehmann's Plaza from Woods Mill Road due to the prospective state highway construction. It was his recommendation that the plaza should have access to the perimeter road not only from Woods Mill Road, but more importantly to Clayton Road. It was this recommendation which led to the negotiations for the 1984 easement. Swenson expressed his opinion that the proposed changes would have an adverse effect upon traffic flow from one shopping center to the other. He opined the additional 23 parking places abutting the northern leg of the perimeter road might increase accidents and might cause delays of 20 or 30 seconds while parked cars backed into the road. He testified the closure of the center exit to the perimeter road would compel motorists to take a more circuitous route past parking areas in order to get from the

center of Lamp and Lantern to the access into Loehmann's Plaza. He conceded that access would be neither impossible nor unreasonable; however, he said, the proposed improvement would result in "changes in the quality of the ingress and egress."

The trial court found that the proposed building construction and driving lane modifications "will unreasonably interfere with the reasonable use of the easement granted by restricting the flow of traffic for the purpose of ingress to and egress from" Loehmann's Plaza. We have reviewed the transcript of the evidence, the affidavits filed, the engineering site plans filed as exhibits, and the 45 minute video tape taken from a vehicle driving along all of the roads and driveways in Lamp and Lantern Village. The only evidence lending even slight support to this finding of fact by the trial court is the opinion expressed by Swenson and the basis for this opinion is contrary to the physical facts.

Facts upon which an expert's opinion is based must measure up to legal requirements of substantiality and probative force, and the question of whether an opinion of an expert is based on and supported by sufficient facts or evidence to sustain it is a question of law for the appellate court. *Wiley v. Pittsburgh & Midway Coal Mining Company*, 729 S.W.2d 228, 233 (Mo.App.1987).

As shown on the attached diagram, in order to drive from the center of Lamp and Lantern Village to the access road into Loehmann's Plaza, a motorist must turn either right or left at the end of the interior driveway. The drive to the left which leads to the perimeter road access that would be eliminated by the presence of the proposed building, passes 13 parking spaces on the driver's side of the road, requires four turns in order to reach Loehmann's Plaza and, on the engineer's site plat drawn to scale, measures approximately 2,250 feet. From the same point a motorist turning to the right can reach the entry of Loehmann's Plaza by making two turns, passing 11 parking places on his side of the road and traveling approximately 975 feet.

proposed changes might possibly affect the flow        of traffic between the two shopping centers.

Swenson's opinion that the former route is less circuitous than the latter is simply not supported by the facts.

His opinion that the addition of 23 parking places might make a motorist less likely to use the perimeter road because of slow-downs caused by parking cars is likewise eroded when viewed in light of the existing circumstances. At present a motorist driving from the access road of Loehmann's Plaza to Clayton Road must negotiate a 90-degree turn, reduce speed for a speed bump behind the hardware store and drive past 60 parking places on his side of the road. To say the addition of 23 parking places, designated for use by employees not customers, would cause a "potential lack of confidence" rendering this route less desirable to a shopper is pure speculation lacking substantial probative force.

In accordance with the direction of the Supreme Court in *Hubert* to "consider the relative benefits to plaintiff as against the injury to defendants", 243 S.W.2d at 343, the trial court found that the proposed new construction would make the easement "less useful and convenient to plaintiffs" but that "defendants could place their building on a different location on their property without interfering with the easements." This finding is totally without foundation. The only evidence on the subject was that proposals submitted to St. Louis County and to the City of Town and Country for permission to build in other locations on defendants property had been denied. The record shows that any inconvenience or diminution in the use and enjoyment of the easement plaintiffs may sustain is insignificant. It is not appropriate for a court of equity to grant injunctive relief over trivial matters where the injury is small or technical. *Hubert v. Magidson, supra*, 243 S.W.2d at 344. Consideration must be given to the effect of an injunction upon all parties in interest and it should issue only if necessary to protect against substantial interference with a right. *Troske v. Martigney Creek Sewer Compa-*

*ny*, 706 S.W.2d 282, 285 (Mo.App.1986); *Community Title Company v. Roosevelt Federal Savings & Loan Assoc.*, 670 S.W.2d 895, 900 (Mo.App.1984).

There is no evidence to support plaintiffs' allegation that the proposed improvements would prevent the flow of traffic between the shopping centers and the evidence falls short of establishing their allegation of serious interference with their enjoyment of the easement. In return for their payment for $250,185 plaintiffs sought to obtain an extension of their 1978 easement including direct access to Clayton Road and Woods Mill Road and between the two shopping centers. They also gained a previously non-existent right to erect signs throughout Lamp and Lantern Village showing directions to Loehmann's Plaza. An additional, and not insignificant, consideration for their payment was the assumption by defendants of a perpetual obligation to maintain the driveways throughout Lamp and Lantern Village, an expense shared by plaintiffs under the terms of the 1978 easement. The improvements proposed by defendants will not deprive plaintiffs of any of these rights. The diminution of the rights bargained for by plaintiff resulting from the elimination of a circuitous and indirect route between the two shopping centers and the creation of a jog in the perimeter road is insignificant in comparison to the substantial deprivation of defendants' right to fully use and develop their property.

Accordingly, the judgment of the trial court is reversed. The cause is remanded with directions to vacate the injunction and to enter judgment in favor of defendants against plaintiffs and intervenors and to award to defendants such sum as the court deems proper for recovery of costs and expenses, including reasonable attorneys fees.

PUDLOWSKI, C.J., and SATZ, J., concur.