LOUIS W. EPSTEIN FAMILY PART-
NERSHIP; Levitz Furniture Cor-
poration, Intervenor in D.C.

v.

KMART CORPORATION, Appellant.

No. 93–1516.

United States Court of Appeals,
Third Circuit.

Argued Aug. 4, 1993.

Decided Jan. 12, 1994.

Howard D. Scher, Richard M. Simins, Melissa E. Kraras, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Daniel M. Brinks, Edward H. Pappas (argued), Dickinson, Wright, Moon, Van Dusen & Freeman, Bloomfield Hills, MI, and Robert W. Powell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for appellant.

Alan M. Black (argued), Black, McCarthy, Eidelman, Feinberg, Anewalt & Kercher, Allentown, PA, for appellee Louis W. Epstein Family Partnership.

Joseph A. Fitzpatrick, Jr. (argued), Fitzpatrick, Lentz & Bubba, Center Valley, PA, for appellee Levitz Furniture Corp.

Before: STAPLETON, HUTCHINSON and ROTH, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant, Kmart Corporation ("Kmart"), appeals an order of the United States District Court for the Eastern District of Pennsylvania. In that order, the district court permanently enjoined Kmart from constructing certain barriers and traffic control devices on a piece of its property. Appellee, the Louis W. Epstein Family Partnership ("Epstein"), holds an easement over the Kmart property. The easement is dedicated to ingress and egress from Epstein's landlocked parcel. The district court's order also enjoined Kmart from removing a sign on its property that had been erected and maintained by Epstein's tenant, Levitz Furniture Co. ("Levitz"). It held that Levitz had an implied easement or, in the alternative, an easement by estoppel, permitting the sign on the Kmart parcel. Finally, the injunction prohibited Kmart generally from future violations of the Declaration of Easements. *See Louis W. Epstein Family Partnership v. Kmart Corp.*, 828 F.Supp. 328 (E.D.Pa.1993).

Kmart asserts that its proposed plan to improve the disputed area by constructing traffic control devices does not interfere with the purpose of the easement. Kmart also challenges the injunction as overly restrictive and broad. We agree with the district court that Kmart's proposed plan would substantially interfere, in some respects, with rights specifically conveyed in the Declaration of Easements, but we conclude that Epstein may not unreasonably enforce the easement to exclude all of the improvements Kmart plans. Thus we hold that the injunction as drafted by the district court is overly broad. We will, therefore, remand this case to the district court so that it may modify the injunction in a manner consistent with this opinion.

Kmart also contends that Levitz has not shown it has either an easement by implication or an easement by estoppel to maintain its sign on Kmart property. We agree. Thus, we will reverse the district court's determination that Levitz has an easement to maintain its sign on the Kmart parcel.[1]

### I.

Prior to October 21, 1975, Louis W. Epstein ("Louis") and Morris Epstein ("Morris") owned a parcel of land on MacArthur Road in Whitehall Township, Lehigh County, Pennsylvania, as tenants in common. Levitz leased the northwestern portion of the parcel since 1962. On October 21, 1975, Morris and Louis divided the parcel. Louis acquired

---

1. The district court had jurisdiction over this diversity action pursuant to 28 U.S.C.A. § 1332 (West Supp.1993) and we have jurisdiction over the final order of the district court pursuant to 28 U.S.C.A. § 1291 (West 1993).

sole ownership of the part Levitz leased and the land that lay immediately to the northwest of the Levitz parcel ("the dominant estate" or "Louis's parcel"). Morris acquired the remainder of the land ("the servient estate" or "Morris's parcel"). This division of the property would have land-locked Louis's parcel but for the contemporaneous Declaration of Easements Louis and Morris executed and recorded. It established an "L-shaped" non-exclusive right-of-way across Morris's property to secure ingress and egress from Louis's property. The easement area is 100 feet wide at MacArthur Road and then turns right at slightly less than a right angle to form the second leg which is 50 feet wide. The second leg leads to Louis's property.

The Declaration states that the purpose of the easement is for "ingress, egress, and regress" to both parcels. Appellant's Appendix ("App.") at 112. The Declaration also states that "[n]o barriers, fences, curbs or other obstruction to the free and unhampered use of said easement area and right of way shall hereafter be permitted." *Id.* It provides that maintenance expenses incurred in the upkeep of the easement, including the "painting of direction signals for the flow of traffic on said area," will be shared by the parties. *Id.* at 113.

At present, the 100-feet-wide portion of the easement is paved and access is gained from MacArthur Road through two thirty-five-foot cuts in the curb, one for ingress and one for egress.

In 1963, before division of the original parcel, Levitz had erected and paid for a sign along MacArthur Road, on what became the servient estate, outside the area which was to become the easement of way. The sign directs traffic to Levitz's store which is set 518 feet from MacArthur Road. At all times Levitz has assumed the expense of lighting the sign and paying for its maintenance. Neither the severance agreement nor the Declaration of Easements mentions the sign.

On November 4, 1992, Kmart acquired the servient estate from Morris for the purpose of erecting a shopping center that would house a number of retail establishments including a Kmart store. As part of its development plan, Kmart proposed substantial modifications to the easement area including erection of concrete barriers, painting of directional traffic lines, including an overhead sign, and erection of traffic control devices. The development plan also proposed moving the Levitz sign, which now sits adjacent to MacArthur Road, in order to allow construction of a deceleration lane on MacArthur Road.

The district court found that this plan would require all patrons who wish ingress to Louis's parcel and the Levitz store to use a right-hand lane fourteen feet wide, as the only lane from which a right-hand turn could be made. *Epstein,* 828 F.Supp. at 334–35. Patrons exiting Louis's parcel and the Levitz store would be confined to two lanes of the easement which then widens to four lanes. The district court also found, under the proposed plan, that delivery trucks, so-called "eighteen wheelers," would be forced to go outside the lane marked for entry to Levitz's store in order to complete the right-hand turn necessary to gain access to the Levitz parking area. *Id.* at 336.

In December of 1992, Epstein filed suit in the Court of Common Pleas of Lehigh County seeking injunctive relief. It claimed that Kmart's proposed development plan violated the Declaration of Easements. Kmart removed the case to federal court and, shortly thereafter, Levitz intervened and sought injunctive relief to prohibit removal of its sign. Levitz and Epstein filed a motion for a preliminary injunction which the district court consolidated into a trial on the merits under Federal Rule of Civil Procedure 65(a)(2). The district court issued findings of fact and conclusions of law and permanently enjoined Kmart from erecting barriers or directional devices in the easement area. The injunction also restricted Kmart from all future violations of the Declaration. Holding that Levitz had obtained an easement over Kmart's land both by estoppel and implication, the district court also enjoined Kmart from removing Levitz's sign.

Kmart filed a timely notice of appeal.

## II.

While we will reverse factual conclusions of the district court only if they are

clearly erroneous, *see* Fed.R.Civ.P. 52(a), we exercise plenary review over the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). Moreover, "[t]he district court cannot, by couching a legal conclusion as a finding of fact, prevent appellate review of legal errors." *Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 931 n. 3 (3d Cir.), *vacated on other grounds,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). We review the grant of a motion for a permanent injunction for abuse of discretion but, as set forth above, "factual determinations prerequisite to issuing the injunction are reviewed for clear error, and we conduct a plenary review of legal questions." *McLendon v. Continental Can Co.,* 908 F.2d 1171, 1177 (3d Cir.1990).

When a federal court sits in diversity, it applies state law and if the state's highest court has not spoken on the issue, the federal court must predict how it would rule if presented with the issue. *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1365 (3d Cir. 1993) (quoting *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir.1990)).

### III.

We begin with the access easement. Kmart contends that its proposed development plan for this area will not substantially interfere with the dominant estate's use. Alternately, it argues that the injunction, as entered, is too broad.

### A.

In the case of express easements, the terms of the conveyance determine the rights and liabilities of the parties. *Hann v. Saylor,* 386 Pa.Super. 248, 562 A.2d 891, 893 (1989). The express language of the agreement, unless ambiguous, controls. *See Merrill v. Manufacturers Light & Heat Co.,* 409 Pa. 68, 185 A.2d 573, 575 (1962). A court should construe ambiguous terms in favor of the grantee. *Id.* (citing *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855 (1917)). In this case, the Declaration of Easements is clear. It describes the property precisely and states

that its purpose is "ingress, egress, and regress" to and from Epstein's landlocked parcel on which Levitz was and is a tenant. App. at 112.

"[T]he owner of land, who grants a right of way over it, conveys nothing but the right of passage and reserves all incidents of ownership not granted." *Mercantile Library Co. v. Fidelity Trust Co.,* 235 Pa. 5, 83 A. 592, 595 (1912). The owner of the servient estate may make continued use of the area the easement covers so long as the use does not "substantially interfere" with the easement's purpose. *Id.; see also Hann,* 562 A.2d at 894 (" 'The owner of the servient estate may not interfere with the free and full use of the easement granted, even though the owner of the easement may have an alternative route.' ") (quoting 12A P.L.E. Easements § 80).

In Pennsylvania, each party to an easement "has a right to insist that the terms of the agreement be complied with, and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result from a proposed change." *Piro v. Shipley,* 211 Pa. 36, 60 A. 325, 329 (1905) (quotation omitted). The district court determined that both parties not only had the right to use the easement for the stated purpose, *i.e.* ingress, egress and regress, but that the *entire* easement must be kept open for that purpose. *Epstein,* 828 F.Supp. at 338–39 (citing *Hann,* 562 A.2d at 894).

Two Pennsylvania cases support the district court's conclusion by refusing to restrict use of portions of the easement even though the purpose of the easement could be fulfilled on the remaining part. In *Scoppa v. Myers,* 341 Pa.Super. 61, 491 A.2d 148 (1985), the plaintiffs sought a declaration of rights in a twenty-foot-wide alley. The trial court held that the plaintiffs were entitled to use the alley under an easement by implication but then determined that ingress and egress could be had by using only fifteen feet of the alley. After concluding that the purpose of the easement could be fulfilled by a dedication of less than the entire easement area,

the court required the defendants to clear only fifteen feet of the alley for plaintiffs' use. *Id.* 491 A.2d at 149. The superior court reversed. It held that once the plaintiffs had established their entitlement to the entire twenty feet, a court could not restrict that entitlement to that which was necessary to accommodate the use. *Id.* at 150. "Although the trial court obviously attempted to achieve a compromise solution satisfactory to all parties, that solution was not consistent with applicable legal principles." *Id.*

■ In a case involving similar principles, *Kinzey v. Marolt,* 288 Pa.Super. 426, 432 A.2d 234 (1981), the plaintiffs had a fifty-foot-wide easement by implication along a right-of-way that crossed the defendants' trailer park. The plaintiffs did not develop the easement nor open it to travel, and the defendants placed trailers and power lines over it. Plaintiffs objected to the erection of barriers in the easement area. The trial court ordered the defendants to clear only twenty-five feet of the easement because that was all that was necessary for the plaintiffs' use as a right-of-way. Here, too, the superior court reversed. It held "[t]he [plaintiffs] ha[d] an easement by implication over the entire width of the street. [sic] and could open and improve same at anytime, even though the portion of Third Street, here in question, ha[d] never been opened or dedicated to a public use." *Id.* 432 A.2d at 235–36 (citation omitted). Thus, in Pennsylvania, the fact that the purpose of an easement can be accomplished in less than the whole area dedicated to the easement does not give the servient estate the right to deny access to the unnecessary portion of the property.[2]

With these principles in mind, we consider Kmart's proposed modifications to the easement area. They include demarcation of three ingress and four egress lanes to and from MacArthur Road and a median area with painted arrows indicating which lane accommodates traffic in a particular direction. Only one ingress and two egress lanes would accommodate traffic proceeding to the part of the "L" shaped easement which leads to the Levitz property. The district court observed that this plan would reduce the 100-foot-wide easement previously wholly dedicated to "ingress, egress and regress" into one ingress lane of fourteen feet. *Epstein,* 828 F.Supp. at 339. This, the district court concluded, was a "substantial interference" with the easement. *Id.*

Kmart contends that even under the unmodified easement, Levitz customers use only the fourteen-foot lane because it is the closest lane to the right turn that patrons ultimately have to make to travel the second part of the "L." Kmart argues that any other use would be unsafe because cars would have to dart across a 100-foot entrance way and drive diagonally, across other lanes of traffic, to the portion of the easement that enters the Epstein property. Kmart suggests the district court erred when it determined that Kmart's traffic lane assignments substantially interfered with use and enjoyment of the easement because Levitz patrons never engaged in a use other than that suggested by the improvements. Kmart says the only modification to use of the easement Levitz patrons would encounter would be their restriction to the right lane for right turns.[3]

**2.** Kmart attempts to distinguish *Scoppa* and *Kinzey.* Kmart points out that the original defendants in both *Scoppa* and *Kinzey* had blocked the entire easement. While this is true, the proposition for which Epstein and Levitz rely on these cases follows from the order vacating the trial court's remedy. In both cases, the trial court attempted to limit the size of the easement because the remaining property adequately served the purpose of the grant. In each case, the superior court reversed because the owner of the easement had a right to engage in the use over the *whole* estate, not just that which was necessary to effect the purpose of the easement. The fact that the original transgression was a total

blockage may have precipitated the plaintiff's resort to court, but it is immaterial to the result on appeal.

**3.** Epstein argues that Levitz could eventually require more than the one lane for adequate access to its property and, therefore, the limitation to one lane is unduly restrictive. The district court did not rely on this rationale. Pennsylvania courts are reluctant to enjoin improvements on easements if the harm is speculative. *See Associates of Philipsburg v. Hurwitz,* 292 Pa.Super. 406, 437 A.2d 447, 451–52 (1981).

This argument by Kmart reduces to a contention that its plan would adequately meet both Epstein's and Levitz's needs. This contention does not lack common-sense appeal, but the district court's findings of fact on this question are decisive under *Scoppa* and *Kinzey*. Its finding that the proposed additions would limit the use of the easement for those seeking ingress to the Epstein property to one fourteen-foot lane is not clearly erroneous. Under *Scoppa* and *Kinzey*, the easement cannot be so restricted. In addition, the erection of curbing within the easement area that Kmart proposes for a median would not only eliminate that area of the easement from its dedicated purpose, as the district court recognized, but would directly contravene an express provision of the Declaration.[4] *See Epstein*, 828 F.Supp. at 339, 341. The district court also found that Kmart's proposal would severely hamper furniture supply trucks from entering the property Levitz occupies and uses for a retail furniture store. *Id.* at 336. This fact alone is enough to establish substantial interference with the easement. When taken together, the changes Kmart proposes would seriously deprive Levitz and the dominant tenement of the free and unhampered use of the easement area granted by the Declaration.

█ Kmart cites no Pennsylvania cases that would permit relocation or redefinition of the terms of an easement provided only that the modified easement is adequate for its original purpose. It relies on cases from other jurisdictions that preclude unreasonable restriction of the land's use by the servient tenement so long as the modification of the easement will not interfere with its purpose. In *RFS, Inc. v. Cohen*, 772 S.W.2d 713 (Mo.Ct.App.1989), the plaintiff, a shopping center, had a general right of ingress over the defendant's adjoining shopping center. The easement included a restriction which said "[g]rantor shall not erect any barriers or other obstructions which will in any manner impair ingress and egress over the Grantor Premises." *Id.* at 715. The trial court en-joined the defendant's attempt to establish traffic control devices on its own property. The Missouri Court of Appeals reversed. The court stated that "so long as the dominant estate receives all of the uses that it bargained for and is entitled to under the easement, equity will not restrict the free and full utilization of the servient estate." *Id.* at 716–17. In reaching its result, it held that the interests of the respective parties had to be balanced. *Id.* at 718.

Kmart cites *RFS* for the proposition that a court should balance the adequacy of a limitation on an express easement against the purpose of the easement. Pennsylvania rejected that proposition in *Scoppa* and *Kinzey*. In both those cases, the trial court's use of the balancing test *RFS* endorses was rejected. Thus, *RFS* is inconsistent with existing Pennsylvania law. It is also distinguishable. The easement in *RFS* was a general grant rather than a precisely defined easement over a clearly demarcated property.

█ Kmart argues, however, if it can be demonstrated that the Epstein property would not be harmed at all by the additions, it should be permitted to make the alterations. Therefore, Kmart contends the district court erred in not considering its contentions that its proposed changes would funnel additional traffic to the Epstein property with the potential to increase usage. These additions included a "jug-handle" off of MacArthur Road which would permit individuals traveling north on MacArthur to turn directly into the property, an act currently not possible because of a median. This argument too runs into the holdings of *Scoppa* and *Kinzey*—that a court may not reduce the size of an express easement merely because its purpose can be otherwise fulfilled. We think the Pennsylvania Supreme Court would not authorize a court of equity to enforce a subsequent owner of a servient tenement's unilateral redefinition of the terms and constraints of a bargained-for easement over the objections of the owner of the dominant tenement. When the subsequent owner purchases the property, he is charged with full

---

4. The Declaration provides:
 No barriers, fences, curbs or other obstruction to the free and unhampered use of said ease-ment area and right of way shall hereafter be permitted....
 App. at 112.

knowledge of the express terms of a recorded easement, and the owner of the dominant tenement is entitled to enforcement as written without risking limitation as a result of a court's determination that the rights can be otherwise served. Kmart purchased the land in 1992 with full knowledge of the terms of the easement. We assume it paid a fair price for the land as encumbered by the easement.

Presumably, the Epsteins knew what they wanted when they bargained for an easement 100 feet wide. To accept Kmart's argument would frustrate their intent and make the rights and obligations of those who claim under them indefinite and uncertain. Kmart got what it bargained for, and it points to no Pennsylvania cases that indicate the scope of the easement can be reduced on the basis of relative need.

Alternatively, Kmart contends that the traffic control plan it seeks to install on the land is required by Pennsylvania Department of Transportation ("PennDOT") regulations if it is to develop its land for commercial purposes. As Levitz and Epstein observe, Kmart has not argued that only the particular piece of land subject to the easement can be used for ingress and regress to its own property.[5] Kmart owns a total of 855 feet of property fronting on MacArthur Road. It has not presented evidence showing that PennDOT will approve no plan for access to its property except one that would interfere with Epstein's declared rights.

In summary, the district court correctly determined that Kmart's plan effectively limited the area for ingress to the Epstein property to fourteen feet. Its plan also calls for construction of an island protected by a curb in the center of the easement and encroachment into the easement by other curbing. In those sections, *no* ingress or egress could take place. This would constitute at least a partial infringement and, under the decisions in *Scoppa* and *Kinzey*, such limitation of an express easement is impermissible. Moreover, the easement specifically prohibits curbing in the easement area. The district court did not err in concluding that the Kmart proposal would constitute a "substan-

tial interference" with Epstein's rights. *Epstein*, 828 F.Supp. at 339, 345.

Kmart's contention that the logical effect of the district court's decision is to dedicate a 100-foot-wide strip of its land to the exclusive service of Levitz's property fares no better. To the contrary, in holding that the proposed plan would create a substantial interference, the district court merely concluded that the easement prohibited Kmart from interfering with the intent of the grantor and grantee of the easement to permit the owners of Epstein's dominant parcel to use part of what is now Kmart property for access to and from the Epstein property. Its conclusion, consistent with the express language of the grant, seems to us required by Pennsylvania law.

### B.

That conclusion, however, does not settle the whole issue. Kmart also argues the district court proceeded improperly in reaching its decision to grant the injunction or, in the alternative, that the injunction is overbroad in its scope.

### 1.

■■■ Whatever the strict substantive law that controls this case, Kmart contends the district court, as a court of equity, should not have granted an injunction without balancing the hardships that its enforcement would have on the servient estate. Generally, when an individual willfully infringes on the easement of another, a court sitting in equity does not consider the hardship on the defendant that will result from an injunction enforcing a clear right. In *Gey v. Beck*, 390 Pa.Super. 317, 568 A.2d 672 (1990), the court stated,

[W]hereas in a case involving an unintentional violation of a restriction on land the chancellor must engage in a balancing of the harm that results from the violation against the harm that would result from issuing an injunction to remedy the violation, in a case involving an intentional violation application of a balancing test is improper.

---

**5.** The proposed development plan indicates that Kmart has planned two other entrances outside

the easement area, including one which directs traffic off of MacArthur Road.

*Id.* 568 A.2d at 678; *see also Peters v. Davis,* 426 Pa. 231, 231 A.2d 748, 752 (1967) (balancing inappropriate where defendant "takes a chance" by violating covenant).

◼ Kmart says its plan could not be an intentional violation because the preparation of the plan itself created no actual violation or real interference. This misses the point. Where a defendant acts unintentionally and incurs expense without knowledge that his conduct is wrong, the equities of the situation may be considered. The equities are different, however, when one is about to go ahead with actions it knows are contrary to an easement. Kmart had full knowledge of the easement when it purchased the property, yet it prepared plans that would, if carried out, substantially interfere with the easement. If Epstein and Levitz had waited, their litigating positions might have been worse. The fact that Kmart was stopped in the planning state from intentionally violating the easement rather than in commission of the act does not invoke the policy in favor of a balancing of the equities that arises in the case of unintentional encroachment.

◼ Because the rights of the parties under the easement are unclear, Kmart also contends willful infringement has not been shown. This argument again misses the point of the balancing test. A court balances equities to avoid harsh results that strict application of law could inflict on a blameless party. The policies underlying cases that permit a defendant otherwise devoid of culpability to show undue harm from strict legal enforcement are not present here. Pennsylvania courts do not balance equities when the defendant "takes a chance" that its action will be permissible under an existing easement or restriction, as Kmart has done here. *See Peters,* 231 A.2d at 752 (quoting *Ventresca v. Ventresca,* 182 Pa.Super. 248, 126 A.2d 515, 518 (1956)). The district court did not err in refusing to consider the burden it put on Kmart by requiring it to comply with the express terms of the easement.

### 2.

Kmart also argues that the injunction is overbroad or vague because of its restrictions on the use of its own property. The injunction states in relevant part,

Defendant Kmart Corporation is PERMANENTLY ENJOINED from constructing or erecting any barriers, fences, curbs, or other obstructions within the easement area.... Defendant is permanently enjoined from erecting any traffic signals and signs, and painting lane demarcation lines, in the easement area, that would direct traffic in respect to Plaintiff's property. Defendant is permanently enjoined from otherwise violating any of the terms of the Declaration of Easements.

Defendant Kmart Corporation is permanently enjoined from removing or relocating Levitz's freestanding sign located on Defendant's property or otherwise interfering with or diminishing the implied easement for the Levitz sign.

*Epstein,* 828 F.Supp. at 345. Kmart contends this injunction is overly broad because it limits its ability to use directional signs to direct traffic flow and so provide safe ingress to its property. It points out that the Declaration of Easements itself contemplates the painting of traffic direction signals. Paragraph (d) of the Declaration states in relevant part,

[T]he reasonable and necessary costs of maintaining the easement area ... including ... painting of direction signals for the flow of traffic on said area ... shall be borne equally by Louis W. Epstein and Morris Epstein, their successors and assigns.

App. at 113. Thus, Kmart concludes, it is the injunction, not the Declaration of Easements, that forever restricts the servient estate owner from painting traffic demarcation lines. Epstein and Levitz respond that any demarcation that prohibits traffic from using the easement to enter the Epstein property would violate the easement.

◼ On this point, we agree with Kmart. The injunction does appear to prevent any orderly restriction controlling incoming Levitz traffic in the interest of the safety and convenience of the users of both the dominant and the servient tenements. We think this is too broad. For example, the easement should not stop Kmart from prohibiting

Levitz customers, or anyone else, from engaging in unsafe driving within the easement. Thus, we think Kmart should be able to erect a speed limit sign. Likewise, for safety reasons, lane demarcations would be appropriate so long as Kmart is restrained from designing the lanes in a manner that would direct traffic away from Epstein's property or limit Levitz customers to a single lane. Equal opportunities for access to both properties must be provided. Modifications that do not materially affect access to or from the Epstein property from the easement do not violate its terms. Accordingly, the injunction is overly broad in prohibiting all traffic flow devices. It should be modified to restrain only those which would limit or prohibit customers seeking access to the Epstein property and the Levitz store from using the easement to the same extent as customers seeking access to Kmart's premises.

Kmart's additional objection to the district court's vague "catch-all" command that "Defendant is permanently enjoined from otherwise violating any of the terms of the Declaration of Easements," is also well taken. *Epstein*, 828 F.Supp. at 345. Kmart contends that under the "catch-all" provision, it can no longer effectively use the land for fear of violating the provisions of the Declaration of Easements. We stated in *Davis v. Romney*, 490 F.2d 1360 (3d Cir.1974), "injunctions, which carry possible contempt penalties for their violation must be tailored to remedy the specific harms shown rather than to 'enjoin "all possible breaches of the law."'" *Id.* at 1370 (quoting *Hartford–Empire Co. v. United States*, 323 U.S. 386, 410, 65 S.Ct. 373, 385, 89 L.Ed. 322 (1945)).

■ Federal Rule of Civil Procedure 65(d) provides in relevant part that "[e]very order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed.R.Civ.P. 65(d). The party constrained is entitled to "fair and precisely drawn notice of what the injunction actually prohibits" because serious consequences may befall those who do not comply with court orders. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Lo-*

*cal No. 70*, 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974); *see also International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). We recognize that "an injunction may be framed to bar future violations that are likely to occur." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir.1985) (quotation omitted), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement, however, does not give the restrained party fair notice of what conduct will risk contempt. *See Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987).

■ In this case, the district court's injunction against "otherwise" violating any term of the easement does not give Kmart fair notice as to all the conduct that is enjoined. Both parties have a right to use the roadway, and any improvements Kmart undertakes must meet PennDOT safety concerns. Kmart should be given fair notice of those improvements it can make and those that the Declaration prohibits. Absent further specification of the acts that would constitute a violation of the Declaration, we think this injunction threatens contempt for undetermined violations. Under the injunction's specific terms, acts such as the erection of barriers and other directional devices that materially restrict the flow of traffic to and from the Epstein property for long periods are prohibited. We think the Declaration of Easements requires no more. A blanket prohibition against future interference with an agreement that has been interpreted in only one respect does not give Kmart notice of all other conduct that is potentially unlawful. This conclusion is particularly apropos in the case of a joint non-exclusive easement. Kmart and Epstein both have rights in this portion of the land. Considering the contentious nature of the parties to this case, future conflict is foreseeable. One party should not be allowed to hold the club of contempt forever over the other's head.

We will remand this case to the district court with directions to strike from its injunction the catch-all provision enjoining all further encroachments. On remand, the district court should also modify the injunction to permit Kmart to propose a plan that includes traffic demarcation lines and devices that do not substantially and unreasonably interfere with ingress and egress over the easement area.

## IV.

Turning to the Levitz sign, we note that Levitz erected it in 1963 just north of the easement area on the MacArthur Road frontage of what is now Kmart's property. Under the initial terms of a 1962 lease between the Epstein brothers and Levitz, however, Levitz covenanted that it would not, "without the consent of the Lessor in writing ... [e]rect or install any exterior signs." App. at 131–32. While the district court found that Levitz initially erected the sign with the oral consent or permission of the lessor, Levitz apparently never complied with the lease by obtaining written consent. *Epstein,* 828 F.Supp. at 337, 341–42. The district court, nevertheless, held that Levitz had secured both an easement by implication and an easement by estoppel in favor of the sign.

### A.

■ An easement by implication arises when the parties intended to create an easement but neglected to include or embody it in a written agreement. *See Motel 6, Inc. v. Pfile,* 718 F.2d 80, 84 n. 9 (3d Cir.1983) ("The law of implied easements ... is ultimately justified in terms of the imputed intention of the parties to the conveyance."); *Mann–Hoff v. Boyer,* 413 Pa.Super. 1, 604 A.2d 703, 707 ("'[A]n easement by implication can only be found 'where the intent of the parties is clearly demonstrated by the terms of the grant, the surroundings of the property and other res gestae of the transaction.'" (quoting *Hann,* 562 A.2d at 893)), *alloc. denied,* 531 Pa. 655, 613 A.2d 560 (1992). The proper test for determining when an implied easement exists is an issue of some debate in Pennsylvania. *See Mann–Hoff,* 604 A.2d at 706–07 (noting conflict).

Some courts have used the "traditional test," while others have used the Restatement of Property test and still others have employed a hybrid approach. *See Mann–Hoff,* 604 A.2d at 706. In *Motel 6,* we noted the divergent lines of authority and then elected to apply the traditional test set forth in *Burns Manufacturing Co. v. Boehm,* 467 Pa. 307, 356 A.2d 763 (1976), at that time the Pennsylvania Supreme Court's most recent pronouncement on the issue. *Motel 6,* 718 F.2d at 85. In *Burns* the court stated:

[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way.

*Burns,* 356 A.2d at 767 (quoting *Tosh v. Witts,* 381 Pa. 255, 113 A.2d 226, 228 (1955)).

Our conclusion in *Motel 6* is somewhat undermined by the more recent decision of the Pennsylvania Superior Court in *Mann–Hoff. Cf. Robinson v. Jiffy Executive Limousine Co.,* 4 F.3d 237 (3d Cir.1993) (reversing prediction of New Jersey state law as to liability for torts committed by independent contractors based upon intervening state appellate decisions rejecting our conclusion). In *Mann–Hoff,* the court quoted the *Burns* language we relied on in *Motel 6* and then rejected it in favor of a more "elucidating" description of the state of Pennsylvania law as set forth in *Owens v. Holzheid,* 335 Pa.Super. 231, 484 A.2d 107, 116 (1984) (Montemuro, J., dissenting). *Mann–Hoff,* 604 A.2d at 706. Other Pennsylvania courts applying either the Restatement test or the traditional test have required an implied easement to be essential to beneficial enjoyment of the dominant property. *Id.* at 708 n. 4. The superior court in *Mann–Hoff* seems to have concluded that there is no clear authority in Pennsylvania on this point and that the Restatement approach and the traditional test must coexist. *Id.* at 707. It then refused to select either of the competing approaches, concluding that a weakened notion of necessity was involved in both. *Id.* at 708 n. 4. The court thus held the easement did not have to be an

"absolute necessity" for use of the dominant estate but rather simply "convenient or beneficial to the dominant estate." *Id.* (citing *Hann,* 562 A.2d at 893 n. 1).

 Like the court in *Mann–Hoff,* we need not select between the competing tests.[6] As mentioned *supra,* the tests are but a surrogate for determining the intention of the parties at the time of the severance of the estates. Moreover, a common theme of both tests is that the parties intended a permanent encumbrance on the servient estate. *See Mann–Hoff,* 604 A.2d at 706 (discussing traditional test); *id.* at 708 (discussing Restatement test). We think the facts of this case indicate that the parties did not intend to create an easement in favor of Levitz because the circumstances surrounding the execution of the Declaration of Easements demonstrate the parties' apparent willingness to provide expressly for easements on other portions of the estate. In addition, the requirement that the use be permanent, which is necessary to an implied easement, is not present.

In 1975, when the Epsteins severed the estate, they expressly provided for an easement of ingress and egress in favor of Levitz but said nothing about the sign. When circumstances suggest that an agreement among parties would include mention of all intended grants, "it [is] not unreasonable to require that they insert a provision in the agreement of sale which would have reserved the same. The absence of such a reservation suggests most strongly that [the alleged right] was not intended to be retained." *Purdy v. Zaver,* 398 Pa.Super. 190, 580 A.2d 1127, 1133 (1990). While failure to make express provision for a right may not always indicate an intent to withhold it, we think the omission of a particular right from an express grant of others relating to the same

property cuts strongly against any inference of an intent to make the unmentioned grant.

 Moreover, we think the requirement of both tests that Levitz's use be "permanent" has not been met. In Pennsylvania, the proponent of the easement must show that its use indicates a permanent arrangement. *See, e.g., Burns,* 356 A.2d at 767; *Mann–Hoff,* 604 A.2d at 706–07. In *Mann–Hoff,* the court held that a grant of the use of a parking lot until the sale of the servient estate was not permanent. *Mann–Hoff,* 604 A.2d at 708. In the case of a right-of-way, Pennsylvania courts have presumed permanency from the nature of the use unless the surrounding circumstances dictate otherwise. *See Burns,* 356 A.2d at 767 n. 5; *Philadelphia Steel Abrasive Co. v. Louis J. Gedicke Sons,* 343 Pa. 524, 23 A.2d 490, 492 (1942). In *Motel 6,* we applied the presumption of permanence that attaches to a right of way to a sewer line and sewage treatment services. *Motel 6,* 718 F.2d at 86. We do not think, however, that a free-standing road sign possesses the inherent permanent characteristics of a right-of-way or a sewer line and sewage treatment services. Thus a presumption that a road sign was a permanent encumbrance on the servient estate is inappropriate.

 The parties may still intend a permanent encumbrance, however, where the nature of the contested use or object does not raise any presumption of permanency. In that case, we may look to the interest of the owner/lessor to determine whether the parties intended to create a permanent encumbrance.

In determining whether Levitz's sign is intended to be a permanent encumbrance, we are mindful that permanency describes the nature of the object, not the nature of the user's interest in the object. Thus, a tenant may construct a permanent object, such as a

---

**6.** In *Motel 6* we commented on the difficult task that federal courts face in discerning the proper standard for concluding an implied easement exists under Pennsylvania law:

Although we have predicted that *Burns* is the law which the Pennsylvania Supreme Court would apply if confronted with this case, the opinion in that case by no means deals with the confusion that exists as a result of the

conflicting lines of Pennsylvania authority concerning implied easements. Indeed, *Burns* compounds the confusion by citing section 476 of the Restatement with apparent approval, but without comment. Until the Pennsylvania Supreme Court comes to grips with the morass, the best that other courts can do is choose one of the conflicting tests.

*Motel 6,* 718 F.2d at 85 n. 12.

road, although the tenant's right to use the land on which the road sits is limited by the duration of the lease.

In the instant case, however, Levitz was a leaseholder who had the ability to "[e]rect or install any exterior signs" only with the written permission of the lessor. App. at 131–32 (1962 Lease); *id.* at 153–54 (1967 Lease). When the parties severed the estate in 1975, the lease term was to end in 1982 with one option to renew for an additional fifteen years. Thus, at the time of severance, Levitz's right to maintain the sign under the lease could extend at most until 1997.[7] At that time, the owner of the servient property could revoke the permission to erect signs on its property. At the time of severance, the most Levitz could hope for was a guarantee of seven more years with an option for fifteen more if it renewed the lease. When a lease terminates, tenants normally take signs with them; roads and sewers are left behind. Signs like that involved in this case are not permanent fixtures. Accordingly, we think the facts indicate that the owners did not intend to subject the servient estate to a permanent encumbrance for a sign in the location in which Levitz maintains it; rather, at best, we think they intended one that would terminate with the lease.[8] Thus, we conclude that the evidence surrounding the severance of the estates in 1975 does not imply that an easement exists in favor of the Levitz sign on the theory Levitz has argued.[9]

### B.

■■■■ The district court also held that an easement by estoppel arose in favor of Levitz. In Pennsylvania, the elements of an estoppel are:

> 1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel.

*Chester Extended Care Ctr. v. Commonwealth,* 526 Pa. 350, 586 A.2d 379, 382 (1991). Thus, the key to an easement by estoppel is inducement coupled with justifiable reliance on that inducement. *See Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502, 503 (1983). The district court found that Kmart and its predecessors in interest had led Levitz to believe, through their silence, that it had an easement. *Epstein,* 828 F.Supp. at 344. Silence, however, is not an actionable misrepresentation where no duty to disclose exists. *See In re Estate of Tallarico,* 425 Pa. 280, 228 A.2d 736, 741 (1967). Moreover, a lessor's silence would not give rise to an estoppel where the tenant's activities are entirely consistent with a temporary, permissive use. "[I]n the absence of expressly proved fraud, there can be no estoppel ... where [the acts] are as consistent with honest purpose and with absence of negligence as with their opposites." *Id.*

■■■■ The district court found that Levitz detrimentally relied on the Epsteins' silence when it continued to maintain the sign and pay for the electrical costs of running it over

---

7. Levitz's sign, however, was not even in strict accord with the express terms of the 1967 lease in force at the time the parcels were separated because Levitz had not obtained the written approval of the land owners to erect it. Thus, Levitz may have a right to maintain the sign only so long as Epstein elects not to enforce the provision of the lease requiring consent.

8. We do not think our decision in *Motel 6* is to the contrary. That case is distinguishable because the motel operators originally built and operated the motel under a long-term lease agreement with the Pfiles under which the Pfiles agreed to provide sewage service by the plant they owned and operated. After the motel was partly destroyed by fire, Motel 6 purchased the motel from the Pfiles and rebuilt it, but the purchase agreement made no provision for sew-

age service. Because no other sewer connection was available to the motel and because there was no language in the agreement of sale that would tend to negate the implication that the easement for sewage treatment services was intended to continue, we held that Motel 6 had a sewage plant easement. *Motel 6,* 718 F.2d at 81, 87. Unlike *Motel 6,* neither the Declaration of Easements nor the lease agreement permits Levitz to unilaterally maintain the sign without consent.

9. We note that the parties do not argue that an easement by implication arises in favor of Epstein but rather confine their contentions to what rights the tenant Levitz may or may not hold. Thus, we do not address whether Epstein may hold a right to maintain a sign on the Kmart parcel for the benefit of its tenants.

the past thirty years. *Epstein*, 828 F.Supp. at 344. As Kmart notes, such costs are entirely consistent with a permissive, temporary use. In order for Levitz's reliance on the Epsteins' silence to be material, Levitz must demonstrate that it acted in a way which indicates it believed the sign was permanent, rather than permissive and subject to the terms of its lease.[10] Levitz has produced no evidence that it would have done anything differently if it had known the use was only temporary and permissive. Thus, even if the owners of the servient estate "misled" Levitz into thinking it could keep the sign there forever, Levitz has failed to show that it altered its position materially in reliance on that representation. Lacking evidence of such behavior, Levitz's reliance can not be deemed material and estoppel is inappropriate.

Accordingly, we reject the district court's conclusion that Levitz holds an easement by estoppel or easement by implication over the Kmart parcel and direct the district court to modify the injunction accordingly.

## V.

In sum, we will affirm the district court's conclusion that Kmart's proposed plan creates a "substantial interference" with the easement rights granted to the Louis Epstein Family Partnership. We hold, however, that the injunction is overbroad and therefore will remand with instructions to modify the injunction to permit Kmart to include traffic control signals, signs, and devices that do not substantially interfere with the rights of the dominant estate while permitting safe and appropriate use by the servient estate. Additionally, we will direct the district court to strike the part of its injunction that generally enjoins further transgressions of the Declaration of Easements. Finally, we will vacate the injunction against removal or relocation of the Levitz sign because the present record does not show that Levitz itself acquired an easement by estoppel or implication. The case is remanded to the district court for further proceedings consistent with this opinion.

---

10. For example, had Levitz, based on the additional business the sign directed to its facility and its belief that it was entitled to keep that sign there for the length of the lease, undertaken an expansion of its premises only to learn later that it had no right to keep the sign in its present location, it might have an arguable claim of reliance. In the instant case, however, nothing demonstrates anything more than a permissive use in this record.