

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-6-1996

# Cinea v. Certo

Precedential or Non-Precedential:

Docket 95-3168

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Cinea v. Certo" (1996). *1996 Decisions.* Paper 169.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/169

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 95-3168

----------

Barbara Cinea; Sandra Bernardi; Ken Bernardi;
Judith Wimbs, on their own behalf and on behalf
of all others similarly situated; Betty Bendel

v.

Pennsylvania State Constable Daniel Certo;
Pennsylvania State Constable Fred Taiber;
Bernard Regan, Manager of Constable Services
for Allegheny County, individually and in their
official capacities; Robert A. Cox;
Nancy Sobolovitch; Patrick Siegworth

                    Barbara Cinea, Sandra and Ken
                    Bernardi and Judith Wimbs, on
                    their own behalf and on behalf
                    of all others similarly
                    situated,
                                        Appellants

----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 92-966)

----------

Argued: December 7, 1995

BEFORE: STAPLETON, SAROKIN
and ROSENN, Circuit Judges

----------

(Opinion filed  May 6, l996)

Janice Haagensen (ARGUED)
Evalynn Welling, Esq.
Neighborhood Legal Services Ass'n
928 Penn Avenue
Pittsburgh, PA  15222-3799

1

Attorneys for Appellants

Howard M. Holmes, Esq. (ARGUED)
Supreme Court of Pennsylvania
Administrative Office of
     Pennsylvania Courts
1515 Market Street
Suite 1414
Philadelphia, PA  19102

                    Attorney for Appellee,
                    Nancy Sobolevitch

----------

OPINION OF THE COURT

----------

SAROKIN, Circuit Judge:


Plaintiffs, a class of Allegheny County judgment debtors, filed suit against Pennsylvania constables and the Court Administrator of Pennsylvania, alleging that plaintiffs were deprived of their property without due process of law by operation of Pennsylvania's rules governing the post-judgment levy and execution against property in proceedings before district justices.  Following a bench trial, the district court entered judgment for the defendants, and plaintiffs appealed. For the reasons that follow, we will affirm.

## I.

Prior to the commencement of this action, each of the named plaintiffs was embroiled in a separate landlord-tenant proceeding before a district justice in Allegheny County.  As a result of these proceedings, they were evicted from their homes, had money judgments entered against them, and had their personal property

2

levied upon in satisfaction of that judgment. Their individual stories are as follows.

## A. Barbara Cinea

Barbara Cinea, a welfare recipient who lived with her eight-year-old son in Pittsburgh, fell behind on her rent payments when her welfare benefits were temporarily suspended. In a proceeding before a district justice, Cinea's landlord, Robert Cox, obtained a judgment against her for rent due and for possession of the property she occupied.

On March 3, 1992, in accordance with that judgment, Cinea was served with an eviction notice. Although the eviction was not to take effect until March 5, Cinea and her son fled hurriedly on March 4 in response to threats by the landlord, leaving behind all of their belongings. The following day, a constable posted a notice on the door stating that the locks had been changed and instructing Cinea to make arrangements with her landlord within thirty days of the date of the notice in order to retrieve her possessions.

On March 16, 1992, before the thirty-day period had expired, Constable Daniel Certo, a defendant in this action, entered the house and levied on Cinea's property pursuant to a writ of execution issued by a district justice. The levy, which was intended to satisfy the money judgment in the landlord-tenant action, covered "ANY AND ALL PROPERTY BELONGING TO DEFENDANT AT ADDRESS." Although Constable Certo could have taken the levied property into his physical possession, he left it, as is customary, in Cinea's former residence subject to the terms of

3

the levy. He then served Cinea at her mother's house with notice of the levy and execution. The Notice of Levy stated: "YOU WILL THEREFORE NOT REMOVE THIS PROPERTY FROM THE PREMISES WITHOUT AN ORDER FROM ME."

Because certain pieces of the furniture that was levied upon belonged to Cinea's mother, her mother filed a property claim to recover them. Following a hearing, a district justice ordered the release of Cinea's mother's property on March 19. Pursuant to Pennsylvania rules for levy and execution proceedings, the landlord filed a timely objection in the state court of common pleas. Meanwhile, for reasons that are unclear from the record, Cinea's mother did not receive her property. The court scheduled the hearing on the landlord's appeal for September 15, 1992-- nearly six months after the district justice's order in Cinea's mother's favor.

Cinea herself also filed an objection to the levy, arguing that the value of the property seized far exceeded the amount of the underlying money judgment ($795) and that the levy was improper in that it included personal, unsalable items. What happened next is not clear from the record. It appears, however, that Cinea prevailed at least in part, and that the district justice ordered the release of much of the property that had been subject to the levy. Letter Order of District Justice Connery (March 30, 1992).[0] Ultimately, after filing the instant action,

_____

[0] Cinea testified before the district court that the district justice "didn't do anything" with respect to Cinea's objection, and that Cinea appealed. Tr. 126. Cinea argues on appeal, however, that the district justice ruled in her favor.

4

Cinea settled with her landlord and recovered all of her property. The landlord released Cinea's mother's property upon settlement as well.

## B. Sandra and Ken Bernardi

Sandra and Ken Bernardi were evicted from their apartment in January of 1992. Before they had actually moved out, Constable Fred Taiber, a defendant in this action, levied upon certain of their property in satisfaction of a $606 money judgment entered against them in the eviction action. The Notice of Levy, like the one given to Cinea, ordered the Bernardis not to remove any levied property from the premises without permission of the constable. Constable Taiber told the Bernardis that they would be imprisoned if they violated this order.

Although the Bernardis' daughter succeeded in recovering property belonging to her that had been levied upon in satisfaction of her parents' debt, the Bernardis themselves filed no objection to the levy. They moved out pursuant to their eviction, leaving the levied property behind. The property was subsequently sold by the constable.

## C. Judith Wimbs

Appellants' Brief, p.8. The district court's Findings of Fact does not clarify this point, because it states merely that the district justice held a hearing on Cinea's claim and one on her mother's claim, and subsequently ordered the release of "some of the property." App. 36. Our review of the district justice's property release order was similarly unavailing; that document simply releases "all" property except certain enumerated items, without indicating whether the property released belonged to Cinea or to her mother.

On November 21, 1991, a district justice entered an order of eviction and a $1,107 money judgment against Judith Wimbs. She subsequently moved to a new address, where Constable Certo levied upon enumerated items of her personal property in satisfaction of the money judgment, and "any and all personal property of the defendant at the address." Like the other plaintiffs in this action, Wimbs was served with a Notice of Levy that forbade her from removing any levied property without an order from the constable; however, unlike the Bernardis and Cinea, she retained possession of the property up until the time of sale.

Wimbs neither objected to the levy nor attempted to contact her landlord regarding satisfaction of the judgment. Consequently, the levied property was sold to the landlord.[0]

## II.

Plaintiffs filed suit on behalf of themselves and all persons living in Allegheny County whose property has been or will be subject to levy and execution before the district justices of Allegheny County, alleging that the levy and execution procedures set forth in the Pennsylvania Rules of Civil Procedure Governing Actions and Proceedings Before District Justices (hereinafter "District Justice Rules") are unconstitutional.[0] The bases of their claims are that the levy procedures deprive judgment debtors of the use of their property

---

[0]The final plaintiff in this matter, Betty Bendel, did not join in the appeal and thus is not discussed in this opinion.
[0]Plaintiffs also asserted state-law claims for wrongful conversion and abuse of process against the constables, but they do not challenge the district court's disposition of these claims on appeal.

6

prior to sale in violation of the due process clauses of the Fifth and Fourteenth Amendments and work an unlawful seizure in violation of the Fourth Amendment. Plaintiffs prayed for declaratory judgment, injunctive relief, and compensatory and punitive damages.

Plaintiffs initially named six individual defendants: Pennsylvania State Constables Daniel Certo, Fred Taiber, and Patrick Siegworth; Bernard Regan, Manager of Constable Services of Allegheny County; Robert Cox, plaintiff Cinea's former landlord; and Nancy Sobolovitch, Court Administrator of Pennsylvania. Upon plaintiffs' motion, however, defendants Cox and Siegworth were dismissed from the case prior to trial.

The case was tried without a jury on February 21 and 22, 1995. The district court entered a directed verdict in favor of defendant Regan, from which order plaintiffs do not appeal. On February 24, the district court entered judgment in favor of all remaining defendants.

On appeal, plaintiffs challenge only the district court's rulings on the constitutional claims.[0] They raise the following three issues for our review: (1) whether judgment debtors whose property is held outside their possession pending appeal of a district justice's ruling are afforded a constitutionally adequate post-deprivation remedy; (2) whether the deprivations of

---

[0]Defendants Certo and Taiber did not enter appearances with respect to this appeal, apparently having settled. Thus, the State Court Administrator, who is generally responsible for "the prompt and proper disposition of the business of all courts and justices of the peace," Penn. Const. art. IV, § 10(a), remains the sole appellee.

7

property that the plaintiffs suffered during the levy appeals process resulted from the levies or from their evictions; and (3) whether the levies at issue violated the Fourth Amendment protection against unlawful seizures insofar as the official levy form lent apparent authority to the landlords' unlawful retention of the property of their evicted tenants.  Because we believe the second issue is a subpart of the first, we will address issues (1) and (2) together.

## III.

The district court had jurisdiction pursuant to 28 U.S.C. §1343.  As this is an appeal from a final order of a district court, we have appellate jurisdiction pursuant to 28 U.S.C. §1291.

## IV.

We review the district court's findings of fact under a clearly erroneous standard and its findings of law de novo. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994).

## V.

We turn first to the question of whether plaintiffs were afforded a post-deprivation remedy adequate to satisfy the due process requirements of the Fifth and Fourteenth Amendments.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(citation omitted). However, "'"[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to

8

time, place and circumstances.'" Id. (citation omitted). On the contrary, it is "'flexible and calls for such procedural protections as the particular situation demands.'" Id. (citation omitted). Under the circumstances presented here, we must determine whether the procedures set forth in the District Justice Rules "represent[] a fair accommodation of the respective interests of creditor and debtor." Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980).

It is axiomatic that the degree of procedural protection required by the Due Process Clause is proportional to the extent of the deprivation. In this case, the extent of the deprivation is in dispute. Plaintiffs argue that they were deprived of their property during the period between levy and execution by the Notice of Levy and the actions of the constables who served those notices, because the Notice and actions indicated to plaintiffs that removal of their property from the site of levying would expose them to the risk of criminal sanctions. Defendants counter that the levies deprived plaintiffs only of the right to alienate their property, and that it was the evictions rather than the levies that deprived plaintiffs of the possession and use of their property.

It may well be the case that plaintiffs, through some combination of the Notice of Levy forms and the statements of the constables, were under the impression that they could not remove their property from the quarters from which they had been evicted. However, neither the text of the forms nor the underlying law supports that assumption.

9

The Notice of Levy forms served on plaintiffs warned them that they would face criminal penalties if they moved their levied property <u>without the permission of the levying constable</u>. The forms did not absolutely forbid plaintiffs to remove the property from their landlords' premises, and no plaintiff makes such an allegation. Nor is there any evidence that any plaintiff sought the constable's permission to move her levied possessions and was refused.[0] Judith Wimbs, the Bernardis, and Betty Bendel apparently did not make any attempt to move their property. Cinea testified that she asked Constable Certo to release her property to her at one point, but that he told her that her former landlord was the one with control over her possessions and that she would have to take it up with him. Cinea does not dispute the truth of this assertion, nor could she do so; her former landlord had changed the locks on the building, and the constable had neither the authority to enter without the landlord's permission nor a means of entering without the landlord's key.

Moreover, under Pennsylvania law, a judgment debtor is subject to criminal sanctions only if she
> destroys, removes, conceals, encumbers, transfers or otherwise deals with property subject to a security interest or after levy has been made thereon <u>with intent to hinder enforcement of such interest</u>.

18 Pa.C.S.A. § 4110 (emphasis added). A judgment debtor who retains possession of levied property may move her property post-

---

[0] We question the relevance of evidence of the constables' behavior to the issue of whether the forms and procedures violate the due process clause, and our discussion of such evidence by no means reflects a determination that it is relevant.

10

levy as long as she does not do so with intent to conceal her movements or defeat execution and informs the constable of her new location. Commonwealth v. Fisher, 14 Pa. D. & C. 603 (1930).

Plaintiffs argue that the fact that it may take three to four months for the court of common pleas to hear an appeal from a district justice's decision regarding the propriety of a levy constitutes a violation of due process. We disagree. First, while a constable theoretically has the legal right to take control and possession of levied property, the constable in each of these cases left the levied property on the premises. Thus, if not for the eviction, each plaintiff would have retained the use and possession of her property pending appeal from the levy. Although a levy still works a deprivation of property even if the judgment debtor retains possession, Montgomery v. Green, 1989 WL 121868, *4 (E.D. Pa. 1989)(not reported in F.Supp.), the fact that the judgment debtors retain possession and use of their property renders the deprivation slight and reduces the amount of process due.

Of course, a constable has the right to remove the levied property from the possession of the judgment debtor at the time of the imposition of the levy. As none of the named plaintiffs suffered this type of deprivation, however, they do not have standing to challenge the rules on this ground. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(holding that to meet the "irreducible constitutional minimum" of standing, a plaintiff must establish, inter alia, that she has personally

11

suffered an "'injury in fact'" that will be redressed by a favorable decision).

Under the circumstances of this case, there is no question that the procedures provided satisfy the requirement of the due process clause. The existing rules provide fairly extensive post-levy procedural protections for judgment debtors. The levying constable must serve on the judgment debtor a notice which explains the nature of the levy and informs the debtor of her rights and liabilities. R.409. This notice informs the debtor that certain types of property are exempt from levy[0] and that she is entitled to a $300 exemption, and explains the procedures for claiming the exemption, appealing from the levy, and obtaining free legal assistance if necessary. Id. If the debtor fails to claim the monetary exemption, the executing officer must set aside sufficient property to constitute a $300 exemption in kind or, if in-kind division is not possible, $300 in proceeds from the sale. R.408.

The executing officer must give notice of the sale by mailing handbills to the judgment debtor and to the plaintiff at

---

[0]The notice states as follows:

> Your real estate cannot be taken on this execution, nor can perishable personal property or personal property which is intangible such as your bank accounts. There are some other types of property which are exempt from execution under State and Federal law, such as wearing apparel, bibles, school books, sewing machines, military uniforms and equipment, most wages and unemployment compensation, social security benefits, certain retirement funds and accounts, certain veteran and armed forces benefits, certain insurance proceeds and such other exemptions as may be provided by law. R.409(2).

their last known addresses. In addition, the executing officer must post handbills in the office of the district justice who issued the order of execution, at the place of levy, and at the place of sale, at least six days prior to the sale. R.412.

The District Justice Rules provide for two ways of challenging the levy prior to sale of the goods. First, the judgment debtor can file an objection in the office of the district justice on the ground that the levy is "illegal or excessive compared to the amount of the judgment, interest, and probable costs." R.413(1). Second, a third party with an interest in all or part of the property levied can file a claim. R.413(2). The filing of such an objection stays the sale of the property pending a hearing pursuant to Rule 420. R.413.

A district justice must hold a hearing on such an objection not later than five days after it is filed, after notifying all parties "by telephone or other timely means of communication." R.421. The justice must then rule on the objection not later than three days after the hearing. Id. In making such ruling, the district justice may, among other things,

(1) Reappraise or redesignate property appraised or designated by the executing officer, or order inclusion in the levy of property set aside by that officer;

(2) Stay or order the abandonment of the levy in whole or in part, or release property from the levy;

(3) Stay or prohibit a sale of all or part of the property levied upon;

R.420(B). Any stay of the execution proceedings ordered by the district justice is effective immediately. R.421(D). Other

13

orders do not take effect for ten days, so as to allow an aggrieved party in interest to appeal. Id.

To appeal from a Rule 420 ruling of a district justice, the aggrieved party must file a statement of objection with the district justice within ten days of the order or determination. R.1016. Unless and until the court of common pleas orders otherwise, the filing of an objection operates as a stay on any execution proceedings. R.1020. The court of common pleas reviews the district justice's determination de novo. R.1019B.

In reviewing these procedural protections, the question we must ask is whether they "represent[] a fair accommodation of the respective interests of creditor and debtor." Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980). We easily conclude that they do, especially in light of the fact that the plaintiffs already had an opportunity to be heard at the original landlord-tenant proceeding and thus clearly had notice of the money judgment against them. The rules outlined above provide ample notice of the levy and execution proceedings, explain the judgment debtor's rights and liabilities, set forth the procedures for filing objections and provide for prompt hearings on those objections. They protect the interest of the judgment creditor by keeping the levy in place during the appeals process, thus preventing the judgment debtor from selling or secreting the property; and they protect the interests of the judgment debtor by providing a forum for a hearing and staying execution of the levy until its validity has been determined. That the appeals process may be delayed at the court of common pleas level is

14

attributable to the operations of that court, not the procedural rules at the district justice level, and in any event, does not rise to the level of a constitutional violation. Plaintiffs' challenge is to the District Justice Rules governing levy and execution proceedings. What happens at the court of common pleas is beyond the province of those rules.

Plaintiffs argue that the automatic stay provision of Rule 1020, which prevents all district justice orders affecting "execution proceedings" from taking effect once an appeal has been filed, infringes the due process rights of judgment debtors insofar as it prevents enforcement of orders releasing their property from levy during the weeks or months appeal is pending before the court of common pleas. Had the levying constables in this case taken actual physical possession of the judgment debtors' property, rather than leaving it in the place of levy, this argument might have some merit. Under those circumstances, the automatic stay provision of Rule 1020 might infringe upon the due process rights of judgment debtors because it would completely deprive them of all use and possession of their property pending appeal, despite a district justice order in their favor. However, that issue is not before us, and we do not decide it here. We conclude simply that where, as here, (1) the levying constable does not take physical possession of the property of a judgment debtor but rather leaves it (theoretically at least) in the possession of the judgment debtor, (2) a district justice issues an order releasing the judgment debtor's property from levy, and (3) that order is stayed pursuant to Rule

15

1020 pending appeal, the fact that several weeks or months may elapse before the court of common pleas finally determines the validity of the order on appeal does not render the automatic stay provision of the District Justice Rules violative of due process.

## VI.

Plaintiff's second argument on appeal is that the levies at issue violated the Fourth Amendment protection against unlawful seizures insofar as the official levy form lent apparent authority to the landlords' unlawful retention of the property of their evicted tenants. Here again, we disagree. While the Fourth Amendment protects property rights outside the criminal search and seizure context, Soldal v. Cook County, Illinois, 113 S. Ct. 538, 543 (1992), a seizure of property only violates the Fourth Amendment if it is unreasonable. Id. at 549 ("'reasonableness is still the ultimate standard' under the Fourth Amendment")(citation omitted).

In this case, the constables had authority to levy on plaintiffs' property in the form of an order of execution from a district justice. As the Supreme Court noted in Soldal, making a showing of unreasonableness when the officer in question was acting pursuant to a court order "would be a laborious task indeed." Id. Moreover, that the levies coincided with plaintiffs' evictions does not transform the levies into unreasonable seizures in violation of the Fourth Amendment. While we recognize the hardship that plaintiffs suffered as a result of the combination of levy and eviction, we cannot conclude that

16

either the constables or the rules under which they acted violate the Constitution.

## VII.

For the foregoing reasons, we will affirm the judgment of the district court.

CINEA v. CERTO, No. 95-3168


STAPLETON, Circuit Judge, Concurring:


As the court observes, this case does not present a substantial constitutional issue. My reasons for so concluding are somewhat different, however, than those assigned in the court's opinion.

A levy is a seizure under color of state law. See, e.g., 15 Pennsylvania Law Encyclopedia, Execution §§ 61, 62 (1959). Such a seizure constitutes deprivation of a property interest for due process purposes whether or not the judgment debtor may ask the permission of the seizing officer to move the property and whether or not the seizing officer may choose to allow the judgment debtor to continue to exercise some of the attributes of ownership. See Finberg v. Sullivan, 634 F.2d 50, 59-60 (3d Cir. 1980). As the court's opinion demonstrates, however, appropriate process in the factual context of this case was afforded under the District Justice Rules. The levy was a court authorized seizure based on a duly entered final judgment and an opportunity was afforded to secure relief from an erroneous or excessive seizure within a maximum of eight days. This process exceeds the minimum process due under the Constitution as interpreted in Finberg.

None of the appellants here is in a position to advance the only arguable constitutional issue presented by the District Justice Rules. If Rule 1020[0] were interpreted as automatically precluding a judgment debtor with a meritorious claim for relief from an erroneous or excessive seizure from securing that relief prior to a final merits decision in the Court of Common Pleas, a judgment debtor adversely affected by the application of the Rule as so interpreted would be able to raise a substantial constitutional issue.[0] The stay provided by Rule 1020, however, is triggered only by the filing of "a statement of objection" – i.e., an appeal -- with the Court of Common Pleas. Thus, this substantial issue would be presented for decision only if an appellant had been successful on her objection before the district justice but the release of her property had been stayed

---

[0] Rule 1020 provides:

> Until further order of the court of common pleas, receipt by the district justice of the statement of objection shall operate as a stay of any execution proceedings that may be affected by the proceedings on the statement.

[0] It is not necessary to construe Rule 1020 in this manner. Rule 1020 provides for "a stay of any execution proceedings that may be affected by the" appeal. At the time the Rule comes into play, the levy has been completed and, of what remains to be done, the execution sale proceedings would seem to be the most likely intended object of the stay. As so construed, Rule 1020 would serve only to protect a judgment debtor's property from sale when he or she has appealed from a decision of the district justice in favor of the creditor. Given that this is the most natural reading and that a contrary one would raise substantial issues under the United States Constitution, I believe the Supreme Court of Pennsylvania would be more likely to adopt this interpretation.

under Rule 1020 when the landlord appealed to that court.  No one other than Barbara Cinea in this case filed an objection with a District Justice.  Cinea filed an objection and secured an order releasing some of her property.  The district court's findings of fact, however, indicate that the landlord appealed only her mother's judgment and the record evidences no appeal from the order releasing a portion of her own personal property. Because no one involved in this case was adversely affected by Rule 1020, the court properly expresses no opinion on its interpretation or constitutionality.