J-A27040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| U.S. HOME CORPORATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SALLY ANN MOYER SINCLAIR AND | : | No. 1040 EDA 2020 |
| PETER SINCLAIR | : | |

Appeal from the Judgment Entered May 13, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2005-C-2185

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  FEBRUARY 19, 2021**

Appellant, U.S. Home Corporation ("U.S. Home"), appeals from the judgment entered in the trial court following the trial court's grant of the motion of Appellees, Sally Ann Moyer Sinclair and Peter Sinclair, to enforce a 2005 settlement agreement that created an easement in favor of the Sinclairs on two parcels owned by U.S. Home.  We affirm.

The facts in this appeal are not in dispute.  The Sinclairs own a residential property at 5877 Applebutter Hill Road in Upper Saucon Township ("Sinclair Property").  In 1977, Sally Ann Moyer and her then-husband were granted an easement by the owners of an adjacent property for the right of

_____

[*] Retired Senior Judge assigned to the Superior Court.

ingress, egress, and regress from the Sinclair Property to Blue Church Road.[1] Sally Ann Moyer and Peter Sinclair later married and took joint ownership of the Sinclair Property.

In 2004, U.S. Home purchased land fronting Blue Church Road, and received approval from Upper Saucon Township ("Township") to build an 85-lot subdivision to be known as Blue Ridge West Estates. This land included the neighboring property of the Sinclair Property on which their easement was situated.

In 2005, U.S. Home brought suit in the trial court to extinguish the Sinclairs' easement and establish a new easement that better conformed to the planned development of Blue Ridge West Estates. The Sinclairs and U.S. Home entered into a settlement agreement on May 31, 2006. In the agreement, the Sinclairs agreed to extinguish the existing easement in exchange for U.S. Home granting the Sinclairs a new easement as follows:

> U.S. Home hereby grants and conveys to Sinclairs, their heirs, personal representatives and assigns, the non-exclusive right of ingress, egress and regress over and along a fifty (50) foot wide easement between Lots 11 and 12 of Blue Ridge West Estates to a certain roadway proposed to be named Saucon Ridge Road (which name may later be changed) as shown on the final plan for Blue Ridge West Estates . . . as recorded in the Office of the Recorder of Deeds of Lehigh County, Pennsylvania . . .

---

[1] Black's Law Dictionary defines an "ingress-and-egress easement" as one that provides "[t]he right to use land to enter and leave another's property." Easement, Black's Law Dictionary (11th ed. 2019).

Settlement Agreement, 5/31/06, ¶3. U.S. Home also agreed to pay the Sinclairs $100,000 as consideration and to construct a 12-foot wide paved driveway through the easement. *Id.* ¶¶4, 5. The agreement provided that the easement would be construed as a covenant running with the land and that the party that prevails in future litigation arising out of the settlement agreement would be entitled to recover attorneys' fees and litigation costs from the other party. *Id.* ¶¶8, 11.

Shortly after the settlement agreement was approved, U.S. Home built a driveway from the Sinclair Property to Saucon Ridge Road along the property line of Lots 11 and 12. N.T., 9/17/19, at 12-13, 71-72. Although there is some dispute about whether the driveway was built to its required 12-foot width, the Sinclairs used the driveway until the date of the present litigation without complaint. *Id.* at 13, 61-66.

In 2018, U.S. Home submitted construction plans to the Township for a house on Lot 11, and the Township issued a notice to proceed with the construction and an amended notice to proceed on January 5, 2018 and July 31, 2018, respectively. *Id.* at 96; Exhibits P-1, P-2. Construction began in 2018, and included the placement of an approximately one- to two-foot high earthen mound, or berm, along the Lot 11 side of the driveway and excavation and regrading of the Lot 11 easement area to capture the storm-water run-off from Lot 11. N.T., 9/17/19, at 22-34, 46, 75-78, 82, 95, 106-08; Answer to Motion, 8/27/19, ¶7. U.S. Home has not developed Lot 12, and the portion of the easement area within Lot 12 remains flat in comparison to the revised

grading on the portion of the easement area in Lot 11. *Id.* at 28, 32-35, 87-88. Construction concluded in 2019, and the Township issued a certificate of occupancy for the house built on Lot 11 on July 16, 2019. *Id.* at 78, 96-97; Exhibit P-3. The finished house on Lot 11 was approximately four feet from the edge of the easement area. N.T., 9/17/19, at 86. U.S. Home did not consult with the Sinclairs during the approval process for Lot 11 or while construction was taking place. *Id.* at 23, 83-84, 100.

The Sinclairs filed the instant motion to enforce the settlement agreement on July 31, 2019, alleging that the regrading and the construction of the berm within the Lot 11 portion of the easement area violated the Sinclairs' right of ingress, egress, and regress. Motion to Enforce Settlement Agreement, 7/31/19, ¶¶8-12. In the motion, the Sinclairs sought an injunction to enforce U.S. Home's compliance with the easement as set forth in the settlement agreement and an award of attorneys' fees and costs. *Id.* ¶¶13-15. On August 27, 2019, U.S. Home filed an answer and counter-motion for attorneys' fees.

On September 17, 2019, a hearing was held before the trial court. At the hearing, Mr. Sinclair testified that the construction of the berm and regrading performed on Lot 11 affected his use of the easement by removing the shoulder on the Lot 11 side of the driveway. N.T., 9/17/19, at 31-32, 34, 40, 53-54. In particular, Mr. Sinclair stated that large vehicles could not drive over the berm inhibiting access by construction and emergency vehicles and also that there would be no space to allow vehicles to pass or for a snow plow

to push snow off the driveway. *Id.* Mr. Sinclair opined that the berm would also inhibit water drainage, leading to more water flow on the driveway. *Id.* at 41.

Richard Roseberry, a civil engineer at Maser Consulting, the firm that U.S. Home contracted for the permitting and land development process on Lot 11, also testified at the hearing. Mr. Roseberry stated that, as the grading of Lot 11 currently exists, the storm water from Lot 11 is not directed onto the driveway. *Id.* at 95. He opined that the improvements to Lot 11 did not negatively impact vehicular access to the Sinclair Property nor did they impede a snow plow from pushing snow on either side of the driveway. *Id.* at 98. Mr. Roseberry stated that the driveway was originally designed to have no peak and storm water "sheet flows down the driveway" towards Saucon Ridge Road where it is directed via the gutter of that road towards the storm-water collection system; the water flow on the driveway was not affected by the construction on Lot 11. *Id.* at 98-99, 103.

Mr. Roseberry testified that his firm was required to obtain a National Pollution Discharge Elimination System permit for Lot 11, which required the management of the two-year storm volume by way of infiltration on each lot. *Id.* at 106-07. The grading on Lot 11 needed to "capture the front yard, the side yard, the rear yard, the roof[, and] the driveway" and "achieve 90 percent of the lot disturbance being directed to an infiltration basin." *Id.* at 106-07. The purpose of the berm, according to Mr. Roseberry, was to ensure that the all of the storm water that hits the disturbed area of the development would

be directed towards the infiltration basin rather than towards other properties. *Id.* at 107-08. Mr. Roseberry stated that the storm-water requirements were dictated by Township ordinance and the Lehigh County Conservation District. *Id.* at 97, 107. In the event any further earth needed to be moved on the property, Mr. Roseberry stated that Township approval would be required. *Id.* at 106.

Mr. Roseberry testified that the bowl-like graded slope downwards away from the driveway was necessary in order to capture the storm water on the entire lot. *Id.* at 108. Prior to any work being performed on Lot 11, the lowest point was on the far end of the lot from the driveway and therefore it was necessary to lower the ground on the driveway side to make it in line with the elevation on the far side. *Id.* Mr. Roseberry estimated that the slope of the regraded portion of Lot 11 coming down from the berm towards the newly built house was approximately 3:1 or 33%. *Id.* at 113. He stated that the berm could be moved approximately three feet towards the Lot 11 house and still maintain the 3:1 slope. *Id.* at 110. Mr. Roseberry testified that if the berm were moved closer to the house, a "very minimal amount" of water would be added to the driveway. *Id.* at 112.

On November 15, 2019, the trial court entered an order providing as follows:

> 1. [The Sinclairs'] Motion to Enforce Settlement Agreement filed July 31, 2019 is GRANTED;

2. [U.S. Home] is enjoined from violating [the Sinclairs'] ingress, egress and regress rights over and along the fifty (50) foot wide easement;

3. [U.S. Home] shall take the necessary steps to remove any encroachments, [undo] any regrading and otherwise restore [the Sinclairs'] easement fully;

4. [U.S. Home] shall pay [the Sinclairs'] litigation costs and attorney's fees in the amount of $5,493.00; and

5. [U.S. Home's] Counter-Motion to [the Sinclairs'] Motion to Enforce Settlement Agreement filed August 27, 2019 is DENIED.

Order, 11/15/19.

In its accompanying opinion, the trial court explained its ruling as follows:

The grading activities of [U.S. Home], including the creation of berms which encroach upon the Easement, substantially interfere with [the Sinclairs'] use of the Easement. [The Sinclairs] have the right to keep the entirety of the Easement open for the express purpose of the Easement, i.e., ingress, egress and regress. Although the purpose of the Easement can be accomplished in less than the whole area dedicated to the [E]asement, the owner of the servient estate does not have the right to deny access to the unnecessary portion of the property to the owner of the dominant estate. The owner of the dominant estate is entitled to enforcement, as written, without risking limitation as a result of a court's determination that the rights can be otherwise served. [The Sinclairs] have the right to open and improve the remainder of the Easement for the stated purpose at any time; however, the berms created by the grading activities of [U.S. Home] substantially interfere with such purpose and potential. While the berms are present within the Easement, [the Sinclairs] are essentially denied access to that portion of the Easement because they are unable to ingress, egress and regress due to the berm's height and steep slope. Further, the presence of the berms would make it more difficult for [the Sinclairs] to improve said portion of the Easement if they wish to do so.

Opinion, 11/15/19, at 4.

U.S. Home filed a motion for post-trial relief, which the trial court denied on March 24, 2020 by order and accompanying opinion. U.S. Home then filed a notice appeal from the order denying its post-trial motion.[2, 3]

_____

[2] On May 13, 2020, the trial court filed a notice pursuant to Rule of Appellate Procedure 1925(a) stating that it was relying on the reasons set forth in its March 24, 2020 opinion accompanying the order denying U.S. Home's motion for post-trial relief.

[3] On May 12, 2020, this Court entered an order directing U.S. Home to praecipe the trial court prothonotary to enter judgment and then file a certified copy of the docket in this Court showing that judgment was entered. *See* ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (appeal cannot be taken from an order denying a motion for post-trial relief and instead lies from the entry of judgment). U.S. Home complied with our order, filing a praecipe to enter judgment in the trial court, which was entered on May 13, 2020. U.S. Home subsequently filed a copy of the updated docket with this Court. We have amended the caption to reflect that the appeal was taken from the entry of judgment rather than the order denying U.S. Home's post-trial motion.

In this case, it appears that U.S. Home was not required to file a motion for post-trial relief pursuant to Rule of Civil Procedure 227.1, and instead it should have appealed directly from the November 15, 2019 order resolving the cross-motions to enforce the settlement agreement. ***See Bennett v. Juzelenos***, 791 A.2d 403, 405-06 (Pa. Super. 2002) (holding that failure to file a post-trial motion from the grant of a motion to enforce a settlement did not cause appellant to waive appellate claims because a post-trial motion is not permitted under Rule 227.1 in such cases). Generally, where a party files an unauthorized post-trial motion from a final order, the post-trial motion does not toll the appeal period. ***Vietri ex rel. Vietri v. Delaware Valley High School***, 63 A.3d 1281, 1288 (Pa. Super. 2013). However, as the propriety of U.S. Home's post-trial motion was not raised by the parties or lower court, Rule 227.1 is silent as to whether a post-trial motion is required in this case, and our precedent does not directly address the effect on the timeliness of an appeal where a party files a post-trial motion from a ruling on a motion to enforce a settlement agreement, we decline to quash U.S. Home's appeal as untimely. ***Cf. Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.***, 52 A.3d 1233, 1247-48 (Pa. 2012) (holding that appellate court should not impose "the heavy consequence of

U.S. Home raises the following issues on appeal:

A. Did the lower court err in concluding that the grading on Lot 11 which was done in the area of the easement substantially interferes with [the] Sinclairs' use of the easement for ingress and egress?

B. Did the lower court err in directing U.S. Home to take the necessary steps to remove any encroachment, und[o] any regrading and otherwise restore [the] Sinclairs' easement area in the absence of municipal approval and the issuance of approval by the appropriate governmental agency modifying the terms of the prior [National Pollution Discharge Elimination System] permit issued in regard to the grading which was done within the easement area?

C. Did the lower court err at paragraph 2 of its order enjoining U.S. Home "from violating [the] Sinclairs' ingress, egress and regress rights along the fifty (50) foot wide easement" as that provision is unduly vague and therefore unenforceable?

D. Did the lower court err in granting the relief requested by the Sinclairs because the Sinclairs did not present evidence at the time of trial that U.S. Home and/or Lennar [Corporation] owned and controlled the entirety of the area within the easement which the Sinclairs sought to have regraded?

U.S. Home Brief at 4-5 (suggested answers, trial court disposition, and unnecessary capitalization omitted).

"When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court." ***Salsman v. Brown***, 51 A.3d 892, 893-94 (Pa. Super.

___

waiver" on a party due to non-compliance with Rule 227.1 unless the applicability of Rule 227.1 to the particular circumstance is "apparent upon its face or, failing that, in clear decisional law construing the Rule").

2012) (citation omitted). We are bound by the trial court's findings of fact to the extent supported by competent evidence, and the prevailing party is entitled to have the evidence viewed in the light most favorable to its position. *Id.* at 894. "Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous." *Id.* (citation omitted).

Like the interpretation of a contract, the interpretation of the terms of an express easement is a question of law as to which our scope of review is plenary. *Zettlemoyer v. Transcontinental Gas Pipeline Corp.*, 657 A.2d 920, 924 (Pa. 1995); *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001). In interpreting an express easement, "if the location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications." *PARC Holdings*, 785 A.2d at 111; *see also Zettlemoyer*, 657 A.2d at 924. Only when the language of the instrument conveying the easement is ambiguous will a court look to the intent of the parties and the attending circumstances at the time the grant was made to determine the extent of the easement. *PARC Holdings*, 785 A.2d at 111.

In its first appellate issue, U.S. Home argues that the trial court erred in concluding that it substantially interfered with the Sinclairs' easement for ingress, egress, and regress to their Property. Because the easement was non-exclusive, U.S. Home asserts that it was able to make use of the portion of Lot 11 that fell within the easement to the extent it did not impinge on the Sinclairs' ability to come and go from their property. According to U.S. Home,

the improvements on Lot 11 did not interfere with the Sinclairs' access as the 12-foot wide driveway was untouched and there remained a flat shoulder on the Lot 12 side. U.S. Home further asserts that Mr. Sinclairs' claimed impacts from the construction were belied by the evidence put forth at the hearing showing that there was ample room for emergency vehicles and snow plows and the improvements were for the purpose that all storm water would be collected on Lot 11. U.S. Home contends that the Sinclairs' claim is merely that it will be harmed in the future if it at some point intends to make use of a different portion of the 50-foot easement for its ingress, egress, and regress, but this claim cannot serve as the basis for a current finding of substantial interference.

Upon review, we conclude that the trial court did not err in construing the Sinclairs' rights under the easement and that its finding that U.S. Home substantially interfered with the easement was supported by the evidence. As U.S. Home points out, the grantor of a non-exclusive access easement is not entirely foreclosed from using the property and "may make use of his land in any way that does not interfere substantially with the previously created easement." ***Associates of Philipsburg v. Hurwitz***, 437 A.2d 447, 451 (Pa. Super. 1981); ***see also Hann v. Saylor***, 562 A.2d 891, 894 (Pa. Super. 1989). Furthermore, "[t]he owner of a dominant estate may not exercise the rights granted to him or her without regard to the rights of the servient owner." ***Purdy v. Zaver***, 580 A.2d 1127, 1131 (Pa. Super. 1990). In addition, no relief is due to the owner of the dominant estate merely based on

an "alleged possible future burdensome use of" the easement by the owner of the servient estate. **Associates of Philipsburg**, 437 A.2d at 451-52.

However, even where the owner of the dominant estate has never used the easement, that party is entitled to "open and improve" the easement "at anytime." **Kinzey v. Marolt**, 432 A.2d 234, 235-36 (Pa. Super. 1981); **see also Croyle v. Dellape**, 832 A.2d 466, 471-72, 476 (Pa. Super. 2003). This retained right to open the easement applies to the entire area of the easement even where the easement holder is currently using less than the full amount or a smaller portion would suffice for their needs. **Scoppa v. Myers**, 491 A.2d 148, 150 (Pa. Super. 1985); **Kinzey**, 432 A.2d at 235-36; **see also In re Jerrehian**, 155 A.3d 674, 683 & n.12 (Pa. Cmwlth. 2017). As our Supreme Court has explained, "the scope of an easement is not diminished because the owner of the benefited land failed to immediately use the easement to the fullest extent allowable." **Zettlemoyer**, 657 A.2d at 926 (quoting **Lease v. Doll**, 403 A.2d 558, 563 n.9 (Pa. 1979)). Thus, an easement holder's "subsequent agreement, use, and acquiescence" does not limit that party from later seeking the benefit of the full rights granted under the easement. **Id.** at 925-27; **see also Piro v. Shipley**, 60 A. 325, 329 (Pa. 1905) (holding that each party to an easement "has a right to insist that the terms of the agreement be complied with, and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result from a proposed change" (citation omitted)).

In this case, the easement as set forth in the settlement agreement provides that the Sinclairs will have access for ingress, egress, and regress from the Sinclair Property to Saucon Ridge Road across Lots 11 and 12. Settlement Agreement, 5/31/06, ¶3. While the settlement agreement required U.S. Home to pave a driveway through the easement, the terms of the easement unambiguously provided that the easement area was 50 feet wide, rather than the 12-foot width of the driveway. *Id.* ¶¶3, 5. The Sinclairs were not confined to only use the 12-foot wide driveway, but instead they have the unilateral option to select any portion of the 50-foot wide easement area for access in the future. As the trial court explained, the Sinclairs have "have the right to open and improve the remainder of the [e]asement for the stated purpose at any time." Opinion, 11/15/19.

Furthermore, competent evidence supports the trial court's conclusion that the construction on Lot 11 substantially interfered with the Sinclairs' use of the easement. Notwithstanding U.S. Home's arguments to the contrary, the substantial interference analysis here does not focus on whether the Sinclairs are currently blocked from traveling from Saucon Ridge Road to the Sinclair Property through the easement area. Rather, the issue is whether U.S. Home's actions substantially interfered with the Sinclairs' ability to open up any portion of the easement's 50-foot width for ingress and egress to their property. The evidence presented below clearly showed that the infiltration basin built on Lot 11 with a 33% slope away from the driveway was not amenable to use for vehicular access to the Sinclair Property. Similarly, while

there was testimony that an emergency vehicle could drive over the berm if necessary and a snow plow could push snow onto the Lot 11 side of the driveway, there is no doubt that the presence of the berm would hinder the Sinclairs from making use of the Lot 11 portion of the easement area as a right of way.

Our precedent supports the trial court's finding that U.S. Home substantially interfered with the Sinclairs' rights under the easement. In **Kinzey**, the trial court found that the appellant had an easement by implication over Third Street, a 50-foot wide, unimproved right-of-way that the appellee had obstructed; the trial court, however, only required the appellee to remove part of the obstruction to allow access over the southern half of the street. 432 A.2d at 235. This Court found that the trial court had erred in allowing the appellee to maintain the obstruction over part of the street, holding that the appellant "could open and improve [the entire width of the street] at anytime, even though the portion of Third Street, here in question, has never been opened or dedicated to a public use." **Id.** at 235-36.

In **Scoppa**, the plaintiffs sued to regain access to a 20-foot wide alley running behind their houses that the defendants, the owners of the alley, had obstructed by building a wall across the right of way. 491 A.2d at 149. The trial court concluded that the plaintiffs had an easement by implication over the alley, but that they could still gain access to their houses if the alley was reduced to 15 feet wide and 5 feet of the wall was permitted to remain

- 14 -

standing. *Id.* This Court overruled the trial court, holding that it was error for the lower court to craft "a compromise solution" that was "achieved at the expense of plaintiffs' legal right to an alley twenty feet in width." *Id.* at 150.

As in *Kinzey* and *Scoppa*, U.S. Home here seeks "a compromise solution" whereby it would be allowed to keep its obstruction in place over the servient estate and the Sinclairs' easement would be reduced accordingly. *Id.* The trial court correctly rejected this claim and held that U.S. Home could not place an obstruction along the entire 50-foot width of the easement that would prevent the Sinclairs from using the easement for its express purpose, namely the Sinclairs' ingress, egress, and regress from their property to Saucon Ridge Road.

U.S. Home also argues that the trial court erred in relying on the Third Circuit Court of Appeals decision *Louis W. Epstein Family Partnership v. Kmart Corporation*, 13 F.3d 762 (3rd Cir. 1994), as there are material factual differences between the two cases. While not binding on us, we find the Third Circuit's analysis of Pennsylvania law to be persuasive and supportive of the trial court's resolution of instant case. In *Epstein*, a partnership that owned a commercial property with no street frontage in Lehigh County held a non-exclusive 100-foot wide easement over a neighboring parcel for ingress and egress to the closest road. 13 F.3d at 764-65. In 1992, Kmart, which had acquired the servient estate, proposed substantial modifications to their property, including the erection of concrete barriers. *Id.* at 765. Relying on *Kinzey* and *Scoppa*, the Third Circuit

determined that under Pennsylvania law the partnership as owner of the dominant estate could insist that the easement be maintained according to its original terms "even though the purpose of the easement could be fulfilled on the remaining part" after Kmart's planned improvements. *Id.* at 766-67. The appellate court concluded that, while Kmart's argument that the owner of the land-locked parcel only needed a 14-foot wide right-of-way had "common-sense appeal," this fact was irrelevant as Kmart's proposal to build barriers on the easement area would eliminate portions of it from its dedicated purpose. *Id.* at 768. The Third Circuit thus affirmed the district court decision that Kmart's proposed alterations would substantially interfere with the partnership's rights under the easement. *Id.* at 769.

U.S. Home attempts to distinguish *Epstein* on the basis that the easement served a commercial property, the entire easement area was paved before Kmart proposed to alter it, and the easement declaration specifically provided that "[n]o barriers, fences, curbs or other obstruction" could be placed in the easement area. *Id.* at 765. None of these distinctions, however, undermines the trial court's decision here or its reliance on *Epstein*. There is no support in our caselaw for U.S. Home's contention that easements benefitting commercial, rather than residential, properties are entitled to greater protection. *Cf. Scoppa*, 491 A.2d at 149-50 (holding that plaintiffs could enforce their rights in easement over entire 20-foot alley that serviced their lots created in a subdivision plan). Furthermore, while in *Epstein* the entire easement area was paved at the outset, the crucial factor was not the

- 16 -

partnership's prior use of the easement area but rather the express grant of a 100-foot wide easement area for the partnership's use and the Pennsylvania rule that "a court may not reduce the size of an express easement merely because its purpose can be otherwise fulfilled." 13 F.3d at 768. Finally, the federal appellate court did not base its decision in **Epstein** on the fact that the easement declaration specifically prohibited the erection of barriers in the easement area, but instead on the fact that Kmart's proposed improvements "eliminate[d a portion] of the easement from its dedicated purpose." ***Id.***

Like in **Epstein**, U.S. Home's obligation under the easement is not merely to ensure that the Sinclairs only have an adequate area for ingress, egress, and regress from their property but that the entire 50-foot width is available for that purpose. Thus, although U.S. Home has not undertaken action that wholly foreclosed the Sinclairs' travel to and from Saucon Ridge Road, the evidence below showed that it prevented the Sinclairs' use of a significant portion of the easement area in Lot 11 through the regrading and construction of the berm. Accordingly, we affirm the trial court's conclusion that U.S. Home substantially interfered with the easement.

U.S. Home next argues that the portion of the trial court order directing it to "take the necessary steps to remove any encroachments, [undo] any regrading and otherwise restore [the Sinclairs'] easement fully" was in error because it did not include a proviso that any such work must be done in accordance with applicable local regulations. Order, 11/15/19, ¶3. U.S. Home contends that as its original work on Lot 11 was conducted in compliance with

an approved Township storm-water plan, it cannot now "be directed to essentially perform an illegal act, i.e., regrade the area of the berm without the issuance of appropriate municipal approvals." U.S. Home Brief at 32.

While we recognize that the trial court's order will likely require new approvals and potentially significant expense by U.S. Home to return the easement area to a state amenable to vehicular access, we do not see this as grounds for vacating the trial court's order. Put quite simply, U.S. Home brought its current predicament entirely on itself. As it conceded at the hearing below, U.S. Home did not advise the Township of its obligations under the easement during the plan approval process or consult with the Sinclairs prior to beginning work on Lot 11. Nor did U.S. Home go to court before beginning construction to seek a modification of the easement or to obtain a declaration that its plans were in compliance with the easement.

Furthermore, while U.S. Home claims that the trial court's order would violate local storm-water regulations, these regulations were not made a part of the record before the trial court. In addition, although the construction on Lot 11 was approved by local authorities, the record is bereft of evidence that U.S. Home could not have gained approval for an alternate storm-water plan on Lot 11 that respected the Sinclairs' easement rights or that it will be impossible to gain approval for work that will satisfy the trial court's order. *Cf. Epstein*, 13 F.3d at 769 (rejecting claim by Kmart that its proposed improvements to the easement area were required by the Department of Transportation because Kmart had "not presented evidence showing that

- 18 -

PennDOT will approve no plan for access to its property except one that would interfere with" the partnership's easement rights). Therefore, we cannot evaluate U.S. Home's claim that the trial court's order is illegal and conclude that U.S. Home's second appellate issue merits no relief.[4]

In its third appellate issue, U.S. Home challenges the portion of the trial court's November 15, 2019 order providing that it "is enjoined from violating [the Sinclairs'] ingress, egress and regress rights over and along the fifty (50) foot wide easement." Order, 11/15/19, ¶2. U.S. Home argues that this injunction is "unduly vague and therefore, unenforceable" because it does not provide fair notice of the conduct that is being enjoined. U.S. Home Brief at 33.

U.S. Home relies solely on **Epstein** for this claim, wherein the Third Circuit determined that portions of the district court injunction constraining Kmart were not sufficiently tailored to remedy the specific harms that Kmart had planned for the easement area. 13 F.3d at 770-72. However, in that case, the federal appellate court focused on specific prohibitions on the trial court's injunction prohibiting signage and striping of lanes – safety measures that were not inconsistent with the use of the easement area for ingress and egress – and a vague "catch-all" command that Kmart not "otherwise" violate

_____

[4] Notwithstanding our ruling here, we take no position on whether local authorities can incorporate the easement area into future storm-water management plans while at the same time protecting the Sinclairs' easement rights.

- 19 -

the easement. *Id.* Here, by contrast, we read the trial court's injunction of U.S. Home to not "violat[e] [the Sinclairs'] ingress, egress and regress rights over and along the fifty (50) foot wide easement" as simply providing that the Sinclairs' rights under the easement encompass the entire 50-foot wide length of the easement and that U.S. Home may not place obstructions in the easement area. Order, 11/15/19, ¶2. We do not interpret the challenged language as prohibiting U.S. Home from undertaking any reasonable non-exclusive use of the easement area, such as locating driveways for access to either Lot 11 or 12 within the easement area, so long as those efforts do not impair the Sinclairs' rights. Therefore, we conclude that U.S. Home has fair notice of the enjoined conduct and it is not entitled to relief on its third issue.

In its final issue, U.S. Home argues that the trial court's mandate that it return the easement area to its prior condition was in error based on a lack of evidence that the company still retained ownership of Lot 11. U.S. Home notes that construction on the single-family residence on Lot 11 was completed in 2019, and it states that it does not have authority to perform work on any land it does not own. U.S. Home does not expressly aver in its brief that it has transferred ownership of Lot 11, only that the Sinclairs failed to submit evidence to the trial court regarding the ownership of the lot.

In its answer to the Sinclairs' motion to enforce the settlement agreement, U.S. Home denied that it still owned all of the Blue Ridge West Estates lots adjacent to the Sinclair Property and "affirmatively averred that the property surrounding [the] Sinclairs' Property is currently owned by

Lennar Corporation and other individual property owners." Answer, 8/27/19, ¶2. U.S. Home did not identify which lots of Blue Ridge West Estates were owned by Lennar Corporation and which were owned by "individual property owners." *Id.* Lennar Corporation and U.S. Home are related entities, and for the purposes of this litigation have been treated interchangeably. *See* N.T., 9/17/19, at 69; Settlement Agreement, 5/31/06, ¶10.

At the trial court hearing, counsel for the Sinclairs attempted to probe the issue of who owned Lot 11 by asking Mr. Sinclair whether U.S. Home or Lennar had provided notice that they had sold Lot 11, a requirement of the settlement agreement. N.T., 9/17/19, at 15; Settlement Agreement, 5/31/06, ¶6. Counsel for U.S. Home objected, and the trial court sustained this objection, ruling that that issue of improper notice of any sale of Lot 11 was not raised in the motion to enforce the settlement agreement and is "not for this hearing[, but] might be for some later hearing." N.T., 9/17/19, at 15-18.

In this case, neither party brought forth evidence at the hearing regarding the issue of the ownership of Lot 11, and indeed, to the extent the Sinclairs did try to raise the issue, U.S. Home challenged the expansion of the hearing into this area. Furthermore, there is no dispute that U.S. Home or a related entity performed the regrading on Lot 11 that substantially interfered with the Sinclairs' easement while the company still owned the property. Therefore, based on the record developed below, we are not persuaded that the trial court committed error by ordering U.S. Home to remove the

obstructions it had created to the Sinclairs' ingress and egress along the easement area. To the extent U.S. Home can claim that it will be impossible for it to comply with the trial court's order that it remove any obstructions from Lot 11 due to a change of ownership, that issue must be addressed in further proceedings before the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/21